[Civ. No. 10515. Fourth Dist., Div. Two. Apr. 27, 1971.]

Adoption of CHARLES MARSHALL HINMAN, a Minor, et al. STEPHEN C. STEIN, Plaintiff and Respondent, v. CHARLES W. HINMAN, Defendant and Appellant.

## COUNSEL

Charles W. Hinman, in pro. per., William B. Eley, Duane S. Kennedy, Jr., and Thomas F. McGrath for Defendant and Appellant.

Best, Best and Krieger, and Terry Bridges for Plaintiff and Respondent.

## OPINION

**GARDNER, P. J.**—To the marriage of Charles W. and Marcia D. Hinman were born three children, Charles Marshall, Valerie Lynn and Victoria Anne Hinman. At all times here pertinent, these children were beneath the age of 21. On June 22, 1965, Mrs. Hinman was granted a final decree of divorce. Custody of the children was awarded to the mother, with certain rights of visitation reserved to the father. Thereafter, Charles Hinman (hereafter "respondent") was convicted of soliciting the murder of his wife and her attorney. At all times relevant to the instant appeal, respondent was confined at the Los Padres Men's Colony at San Luis Obispo.

On June 25, 1966, Mrs. Hinman married the petitioner, Stephen C. Stein (hereafter "petitioner"). The three children of Mrs. Stein's first marriage have lived with their mother and petitioner since the marriage.

On April 11, 1969, Mr. Stein filed a petition in the Riverside County Superior Court seeking to adopt his wife's three minor children, Charles Marshall, Valerie Lynn and Victoria Anne Hinman. The petition asserted that the consent of respondent, the children's natural father, was not necessary to the adoption on two grounds: first, he had wilfully failed to contribute to the care, support and education of the children; and, second, he had been convicted of the felony of conspiracy to commit murder, the duration of the sentence for which dictates that he would be unable to provide a home for the children for a period of years. Mrs. Stein's consent to her husband's adoption of her children was obtained.

On August 22, 1969, the clerk of the superior court made an order directing respondent to appear in superior court on October 21, 1969, to show cause why the children should not be declared free of his custody and control according to the petition of Stein.[1] The record reflects that this citation was personally served on respondent at the California Men's Colony at San Luis Obispo.

---

[1] According to the probation report, respondent had been advised of the petition for adoption, and in a letter to the mother, dated May 28, 1969, stated that he would not give his voluntary consent.

On October 17, 1969, respondent sent a rambling, three-page letter to the Riverside Superior Court. This letter listed respondent's return address as "AE, San Luis Obispo, California." In the letter, respondent accused his former wife and her new husband of immorality and proclaimed his own innocence of wrong doing. He stated that he would be unable to appear at the hearing because the "officials here do not recognize subpoenas in civil matters." He did not request a continuance of the hearing or that an attorney be appointed for him, nor did he allege indigency on his own behalf. This letter was received by the court on October 21, 1969, the date of the emancipation adoption hearing. Respondent, of course, did not attend this hearing, but the court was aware that he was in prison.

While the judge made no specific inquiries concerning respondent's financial condition, Mrs. Stein testified that at the time of their divorce in 1964, respondent was worth three million dollars, and the probation report stated that he had a substantial estate and was the owner of the Lake Encanto Resort at Cornell, California. In addition, the probation report advised that the respondent had attended law school and practiced law at one time. The court neither appointed counsel to represent respondent nor did it adjourn the hearing to make further determination regarding his ability to retain counsel, but proceeded with the hearing. After taking testimony and reviewing the probation report, the court found that the consent of the minors' natural father was unnecessary to the adoption because he had wilfully failed to contribute to their care, interest and education for more than one year and because his conviction of a felony would prevent him from providing a normal home for the children for a period of years. Thereupon the court granted petitioner's request and ordered that the three minors be adopted by the petitioner.

Notice of the court's ruling was sent to the respondent on October 24, 1969. On November 1, 1969, respondent sent a document entitled "Motion to Set Aside Judgment" to the superior court. This, again, was a rambling, eight-page diatribe against his ex-wife and her current husband. A minute order of the court, dated November 17, 1969, acknowledges receipt of this communication but nothing further was done as it was not accompanied by a notice of motion fixing a time and place for a hearing. Then on November 24, 1969, the court received from respondent a document entitled, (1) Appeal; (2) Request for Appointment of Attorney; (3) Ex Parte Order to Set Aside Judgment; (4) Order to See Children. This document advised that its primary purpose was to appeal the judgment granting the adoption. The minutes of the court reflect that the request for appointment of attorney, for ex parte order to set aside judgment, and for order to see children were each denied, but that the "document entitled 'Appeal, etc.,' is ordered filed nunc pro tunc as of Monday, November 24,

1969." At the same time the trial judge sent a letter to respondent advising him of his actions and stating that since this was a civil proceeding the court was not in a position to appoint counsel to represent him, but referred him to the Riverside County Legal Aid Society. This letter advised him as to the time limit on notice of appeal and recommended that he obtain counsel if he intended to appeal.

On December 19, 1969, a notice of appeal in regular form was filed by respondent's attorney. Thereafter, a corrected notice of appeal purporting to appeal the judgment of emancipation/adoption and the order refusing to set aside that judgment were filed on respondent's behalf.

In this appeal, respondent asserts that it was error for the court to enter judgment granting the petition for the emancipation/adoption of the minor children and to deny his motion to set aside this judgment because (1) the court failed to appoint counsel to represent respondent as required by Civil Code section 237.5; and (2) to allow the emancipation of a minor pursuant to Civil Code section 232 et seq., without appointing counsel to represent an indigent parent is to deprive that parent of life, liberty or property without due process of law, in violation of the Fourteenth Amendment.

Initially, we note Civil Code section 238, which reads as follows: "Any order and judgment of the court declaring a minor person free from the custody and control of any parent or parents under the provisions of this chapter shall be conclusive and binding upon such minor person, upon such parent or parents and upon all other persons who have been served with citation by publication or otherwise as provided in this chapter. After making such order and judgment, the court shall have no power to set aside, change, or modify it, but nothing in this section shall be construed to limit the right to appeal from such order and judgment." Thus, we treat respondent's allegations of error as relating to the judgment of emancipation/adoption only, inasmuch as the trial court would have been acting in excess of its jurisdiction if it had granted respondent's motion to set aside that judgment.

The procedures for emancipating a minor child from the custody and control of a parent are outlined in chapter 4 of title 2 of part 3 of the first division of the Civil Code. ■ The emancipation of a child from the control of a parent is a prerequisite of the adoption of that child without the consent of the parent. Civil Code section 237.5, provides, in pertinent part: "At the beginning of the proceeding on a petition filed pursuant to this chapter, the judge shall first read the petition to the child's parents, if they are present, and may explain to the child the effect of the granting of the petition and upon request of the minor upon whose behalf the petition has been brought or upon the request of either parent the judge shall explain any term or allegation contained therein and the nature of the proceeding,

its procedures, and possible consequences. The judge shall ascertain whether the minor and his parent have been informed of the right of the minor to be represented by counsel, and if not, the judge shall advise the minor and the parents, if present, of the right to have counsel present. The court may appoint counsel to represent the minor whether or not the minor is able to afford counsel, and, if they are unable to afford counsel, shall appoint counsel to represent the parents. The court may continue the proceeding for not to exceed seven days, as necessary to . . . determine whether the parents are unable to afford counsel at their own expense."

 Respondent's initial contention in this appeal is that the trial court erred in failing to appoint counsel to represent him at the emancipation/adoption hearing or alternatively in failing to adjourn the hearing to determine the question of his indigence, in violation of Civil Code section 237.5.

 Petitioner initially attempts to counter this argument by asserting that, by its terms, Civil Code section 237.5, obligates the court to appoint counsel for an indigent parent only in the event that parent is physically present at the hearing. We do not so interpret the statute. By its terms, section 237.5 obligates the court to read the petition seeking emancipation to the child's parents and to inform them of the minor's right to the assistance of counsel, only if the parents are present at the hearing; it does not expressly limit the obligation of the court to appoint counsel for indigent parents to those cases wherein the parents are physically present in court.

Nor will this court strain the language of the statute to reach such an interpretation. It is not difficult to envision situations wherein parents, due to circumstances entirely beyond their control, would be unable to be physically present at a hearing authorized by Civil Code section 232 et seq. Yet the courts of the United States, of California and her sister states have recognized that the interest of a parent in his children is a basic value implicit in the concept of ordered liberty. (*Meyer* v. *Nebraska,* 262 U.S. 390 [67 L.Ed. 1042, 43 S.Ct. 625] [see also *Griswold* v. *Connecticut,* 381 U.S. 479 [14 L.Ed.2d 510, 85 S.Ct. 1678]; *Poe* v. *Ullman,* 367 U.S. 497 [6 L.Ed.2d 989, 81 S.Ct. 1752], dissenting opinions of Justices Douglas and Harlan; *Skinner* v. *Oklahoma,* 316 U.S. 535 [86 L.Ed. 1655, 62 S.Ct. 1110]]; *City of Carmel-by-the-Sea* v. *Young,* 2 Cal.3d 259 [85 Cal.Rptr. 1, 466 P.2d 225]; *State of Oregon* v. *Jamison,* 251 Ore. 114 [444 P.2d 15].) In the absence of a clear expression to the contrary, we must presume that by enacting Civil Code section 237.5, the Legislature intended to afford maximum recognition to this interest.

 Thus, we are brought to the central question raised by this appeal, whether, on the basis of the information with which it was presented, the

trial court abused its discretion in failing to either appoint counsel to represent respondent or adjourn the proceedings in order to make further inquiry in regard to the issue of his indigence. It is immediately apparent that a trial court, attempting to discharge its obligation under Civil Code section 237.5, may be presented with problems not commonly posed in right to counsel situations. If the parent whose interest section 237.5 seeks to protect is present in court, the procedures surrounding the court appointment of counsel are like those applicable in criminal or civil commitment proceedings. However, if the parent is not physically present, the court is presented with a situation having no analogy in the criminal-civil commitment area. The trial judge must make his determination on the basis of such information as he has. In the instant case we need not concern ourselves with the situation in which the court has no information concerning the parent's financial condition, for we have determined that in the instant case, the court had adequate information before it from which to conclude that respondent was able to procure the services of private counsel if he so desired. Mrs. Stein, the respondent's former wife, testified that at the time of their divorce in 1964, respondent was a multi-millionaire. The probation report presented to the court at the hearing stated that respondent was the owner of a resort and had substantial assets. From this information, the court was justified in concluding that respondent did not qualify for appointed counsel under Civil Code section 237.5.

The respondent provided no information to the contrary in his own behalf. The probation report stated that respondent had attended law school and had, at least at one time, been licensed to practice law in this state. Yet in his letter to the court, the only one the trial judge had before him at the time of the hearing, respondent neither alleged indigency nor requested the appointment of counsel at public expense. We find that, on the basis of the information with which he was presented at the hearing, the trial judge made a proper determination.

■ Alternatively, respondent contends that to allow the emancipation of a minor pursuant to Civil Code section 232 et seq., without appointing counsel to represent an indigent parent is to deprive that parent of life, liberty or property without due process of law, in violation of the Fourteenth Amendment. While we may agree with respondent's assertion as an abstract proposition, we find that it begs the question raised by the instant case. In order to qualify for the appointment of counsel, either under Civil Code section 237.5, or the Fourteenth Amendment, there must be a determination that the party to be represented is indigent. That determination must be made at a fixed moment in time on the basis of the information then available. In the instant case, we have found that the trial court made its determination at the appropriate moment, and that its determination

is supported by substantial evidence. Thus, that determination became conclusive of the issue upon the parties to the action and will not be disturbed on appeal. The resolution of this inquiry precludes consideration of respondent's constitutional assertions.

Respondent contends that the trial court was completely unaware of the provisions of Civil Code section 237.5, by reason of the fact that in its letter to the respondent it advised that since this was a civil matter, it could not appoint an attorney for him. A much more plausible explanation is the court was aware that as of that time by reason of Civil Code section 238, the only remedy available to respondent was appeal, and under no code section known to us did the court have the authority to appoint an attorney for the respondent for the purpose of perfecting an appeal.

Judgment affirmed.

Kerrigan, J., and Tamura, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 23, 1971.