[Nos. D006293, D007891. Fourth Dist., Div. One. June 26, 1989.]

In re ANGELA R., a Minor.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Petitioner and Respondent, v.
LISA M., Objector and Appellant.

COUNSEL

Dacia Burz, under appointment by the Court of Appeal, for Objector and Appellant.

Lloyd M. Harmon, Jr., County Counsel, Daniel J. Wallace, Chief Deputy County Counsel, Suzanne Ramirez and Arlene Prater, Deputy County Counsel, for Petitioner and Respondent.

Sharron Voorhees, under appointment by the Court of Appeal, for Minor.

OPINION

**KREMER, P. J.**—On May 12, 1987, in San Diego Superior Court case number J136359, the juvenile court under Welfare and Institutions Code section 366.25 authorized the San Diego County Department of Social Services (Department) to institute proceedings under Civil Code section 232 to free dependent child Angela R. from her mother Lisa M.'s custody and control. Lisa appealed. (D006293.)

On January 15, 1988, in San Diego Superior Court case No. A32031, the court declared Angela free from Lisa's custody and control. Lisa appealed. (D007891.)

Meanwhile, on February 29, 1988, the Department moved to dismiss Lisa's appeal in D006293.

On March 22, 1988, we deferred ruling on the Department's motion to dismiss in D006293 until consideration of Lisa's appeal on its merits.

On December 23, 1988, we consolidated the appeals.

We dismiss Lisa's appeal in D006293 from the order authorizing institution of proceedings to terminate parental rights. In D007891 we affirm the judgment freeing Angela from Lisa's custody and control.

D006293

I

FACTS AND PROCEDURAL HISTORY

Angela was born on August 2, 1980.

In July 1985 the juvenile court declared Angela its dependent after Lisa admitted she endangered Angela by not providing her with reasonable and necessary housing. (Welf. & Inst. Code, § 300, subd. (b).) The court removed Angela from Lisa's custody and placed her in a foster home.

In January 1986 at a review hearing the court continued Angela as a dependent child with foster home placement.

In August 1986 at a review and permanency planning hearing the court continued Angela as a dependent child with foster home placement. Review was scheduled for February 1987.

In February 1987 the social worker recommended to the court that the Department pursue an action under Civil Code section 232 to free Angela from Lisa's care and custody. The matter was continued until March 1987, April 1987, and ultimately May 12, 1987.

On May 12, 1987, after a contested hearing, the court continued Angela as its dependent child with foster home placement. The court directed the Department to pursue an action under Civil Code section 232. The court found "return of the minor to the care, custody and control of the parents would create a substantial risk of detriment to the physical or emotional well-being of the minor and there is not a substantial probability that the minor will be returned within six months; the minor is considered adoptable . . . ." Lisa appeals the order authorizing institution of section 232 proceedings. We dismiss her appeal.

## II

### DISCUSSION

The Department has moved to dismiss Lisa's appeal from the order authorizing institution of proceedings under Civil Code section 232. The Department correctly contends the order is nonappealable.

Chapter 1075, Statutes of 1988, added subdivision (j) to Welfare and Institutions Code section 366.25. Subdivision (j) provides: "An order by the court that authorizes the filing of a petition to terminate parental rights pursuant to Section 232 or that authorizes the initiation of guardianship proceedings is not an appealable order but may be the subject of review by extraordinary writ." ■ In enacting subdivision (j), the Legislature has retroactively terminated any right to appeal from an order under Welfare and Institutions Code section 366.25 authorizing proceedings to terminate parental rights. (*In re T.M.* (1988) 206 Cal.App.3d 314, 315-316 [253

Cal.Rptr. 535].) "The right to appeal is wholly statutory, and the Legislature can terminate a perfected appeal by retroactive legislation clearly indicating an intent to affect pending appeals. [Citation.] Such intent is evident here: subdivision (i) of section 366.25 (added in 1987) expressly states that the statute applies to minors adjudged dependent children before 1989." (*Id.* at p. 316.)

The appeal in D006293 is dismissed.[1]

D007891

I

PROCEDURAL HISTORY

In August 1987 the Department petitioned under Civil Code section 232, subdivision (a)(7), to free Angela from Lisa's custody and control.[2]

On October 26, 1987, Lisa was personally served with a copy of the petition and a citation to appear in court on December 4, 1987, to show cause why Angela should not be declared free from parental custody and control.[3]

---

[1] In *In re Debra M.* (1987) 189 Cal.App.3d 1032, 1039 [234 Cal.Rptr. 739], the court held a reference for adoptive planning was essentially interlocutory and not a final appealable judgment. The court noted: "A parent may, of course, appeal from the adverse outcome of a section 232 hearing, a hearing resulting in a *final* judgment. Such an appeal no doubt would involve the same issues which would arise along the procedural path; at that point, the adequacy of the evidence and the trial court's determinations would be more suitably reviewed by this court." (*Ibid.*) Here, of course, Lisa has appealed the adverse outcome of the Civil Code section 232 proceedings. (D007891.)

[2] Under Civil Code section 232, subdivision (a)(7), an action may be brought to terminate the parental rights of a minor "[w]ho has been in out-of-home placement under the supervision of the juvenile court, the county welfare department, or other public or private licensed child-placing agency for a one-year period, if the court finds that return of the child to the child's parent or parents would be detrimental to the child and that the parent or parents have failed during that period, and are likely to fail in the future, to maintain an adequate parental relationship with the child, which includes providing both a home and care and control for the child."

Civil Code section 232, subdivision (a)(7), also provides: "The court shall make a determination that reasonable services have been provided or offered to the parents which were designed to aid the parents to overcome the problems which led to the deprivation or continued loss of custody and that despite the availability of these services, return of the child to the parents would be detrimental to the child. . . . [¶] If the minor has been adjudged to be a dependent child of the court pursuant to Section 300 of the Welfare and Institutions Code, the court shall review and consider the contents of the juvenile court file in determining if the services offered were reasonable under the circumstances."

[3] The citation personally served on Lisa stated: "You are advised that if the parent[s] and minor[s] are present at the time and place above stated the judge will read the petition and if

On December 4, 1987, Lisa did not appear at the hearing. The court entered Lisa's default. The court continued the matter until January 15, 1988, for a prove-up hearing.

On January 15, 1988, the court read and considered the probation report, took judicial notice of the findings and orders of the dependency proceedings, and considered the dependency file in determining the services offered were reasonable. The court found the requirements of Civil Code section 232, subdivision (a)(7), were proved by clear and convincing evidence, reasonable services were offered to Lisa, awarding Lisa custody would be detrimental to Angela, and an award of custody to the Department was required to serve Angela's best interests.[4] The court entered judgment declaring Angela free from Lisa's custody and control and referring Angela to the Department for adoptive placement. Lisa appeals the judgment.

## II

### DISCUSSION

Lisa contends we should review certain alleged errors occurring at the juvenile court permanency planning hearing assertedly infecting the

---

requested may explain the effect of the granting of the petition and if requested the judge shall explain any term or allegation contained therein and the nature of the proceeding, its procedures and possible consequences and may continue the matter for not more than 30 days for the appointment of counsel or to give counsel time to prepare.

"The court may appoint counsel to represent the minor whether or not the minor is able to afford counsel. If any parent appears and is unable to afford counsel, the court shall appoint counsel to represent each parent who appears unless such representation is knowingly and intelligently waived.

"If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your pleading, if any, may be filed on time."

[4] At the prove-up hearing on January 15, 1988, the court stated: "Court finds that the minor's been in out-of-home placement under the supervision of the Department of Social Services for a period in excess of one year.

"Court further finds return of the minor to the mother would be detrimental to the minor. Mother has failed during the time the child has been out of the home, and is likely to fail in the future, to maintain an adequate parental relationship to the child, including providing a home, care for the child.

"The child has some significant medical problems, health problems, emotional problems, and was not progressing developmentally while in the care of the mother, but this has been significantly remedied since the child has been in the care of the Department.

"The mother's really made no strides toward improving the condition such that she could properly take care of the child.

"Reasonable services have been provided by the Department. An offer to the mother does not aid her to overcome the problems which she has, mainly drug and alcohol related. But that despite the availability of services, it appears there would still be a continuing loss of custody to the child. The return of the child would be detrimental.

"The child wishes to be adopted by her current foster parents.

"The court makes these findings by clear and convincing evidence."

outcome of the ensuing Civil Code section 232 proceedings. Lisa also contends the court's finding under section 232 lacked substantial evidentiary support. Lisa further contends the court in the section 232 proceedings erred in entering her default and in not appointing counsel for her. We affirm the judgment under section 232.

## A

### JUVENILE COURT PROCEEDINGS

In *In re Kristin B.* (1986) 187 Cal.App.3d 596, 605 [232 Cal.Rptr. 36], the court held "where a judgment terminating parental rights is challenged on appeal, an earlier appeal arising out of a juvenile court dependency proceeding is not moot *if* the purported error is of such magnitude as to infect the outcome of the ensuing termination action *or* where the alleged defect undermines the juvenile court's initial jurisdictional finding. Consequently, the question of mootness must be decided on a case-by-case basis." (*Id.* at p. 605, italics in original, fn. omitted; see also *In re Linda P.* (1987) 195 Cal.App.3d 99, 105-106 [240 Cal.Rptr. 474]; *In re Debra M., supra,* 189 Cal.App.3d at p. 1039.)

Relying on *In re Kristin B., supra,* 187 Cal.App.3d 596, Lisa contends in her appeal from the Civil Code section 232 judgment she may properly raise the errors of the juvenile court. The Department agrees with the holding of *In re Kristin B.* that the issue of mootness should be decided on the posture of each particular case. However, the Department contends under the facts here the judgment under section 232 has rendered moot any errors in the juvenile court permanency planning hearing.

The court in *In re Kristin B., supra,* 187 Cal.App.3d at page 604, perceived several instances where error in the juvenile court proceedings might bear on later termination proceedings. The court stated "where the termination judgment is based solely upon testimony improperly ruled admissible at a permanency planning hearing, the judgment's propriety is questionable. And where the superior court's jurisdiction to entertain a petition for freedom from parental control is predicated on a child's dependency status or out-of-home placement (see, e.g., Civ. Code, § 232, subds. (a)(2), (a)(7)) which arose out of an erroneous jurisdictional finding of the juvenile court, the ultimate judgment may be a nullity." (*Ibid.,* fns. omitted.)

Lisa does not assert the termination judgment was based solely upon testimony improperly ruled admissible at the permanency planning hearing. Neither does she assert Angela's out-of-home placement arose out of an erroneous jurisdictional finding of the juvenile court. Instead, Lisa attacks

the juvenile court's denial of her counsel's motion for continuance and the evidentiary basis for the juvenile court's findings under Welfare and Institutions Code section 366.25. However, Lisa makes no showing any such asserted error was of such magnitude as to infect the outcome of the Civil Code section 232 proceedings.

1

DENIAL OF CONTINUANCE

When Lisa did not appear at the permanency planning hearing on May 12, 1987, her counsel sought a continuance.[5] Counsel argued Lisa "did not have actual notice of the hearing, due to the fact that the trial calendar was so delayed at the time of the last court appearance that she had to leave to get to work." Counsel then told the court: "[W]e had had one readiness hearing, and then we were sent down to the trial calendar; and after much waiting around, and the fact that she had a brand new job, I told her it was okay for her to leave at that point. Counsel had selected a date at that point, and my client was advised of the date we had selected; however, she did not appear in court, and was not ordered to appear, and has not been cited." The court asked if Lisa had actual notice of the hearing. Counsel replied "to the best of my recollection she was advised of the date. I cannot—I'm not positive that's even true. To the best of my recollection she knew the date we had selected." The court denied a continuance. Counsel for the parties then presented evidence, cross-examined witnesses and argued to the court.

Lisa contends in denying a continuance the court effectively denied her statutory right to attend the hearing and actively participate in her defense including assisting counsel in examining witnesses. She also contends the juvenile court lacked jurisdiction to conduct the permanency planning hearing absent adequate notice to her. However, Lisa makes no showing the

---

[5] Welfare and Institutions Code section 352, subdivision (a), provides in relevant part: "Upon request of counsel for the parent, guardian, minor, or petitioner, the court may continue any hearing under this chapter beyond the time limit within which the hearing is otherwise required to be held, provided that no continuance shall be granted that is contrary to the interest of the minor. In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements.

"Continuances shall be granted only upon a showing of good cause and only for that period of time shown to be necessary by the evidence presented at the hearing on the motion for the continuance. . . .

"In order to obtain a motion for continuance of the hearing, written notice shall be filed at least two court days prior to the date set for hearing, together with affidavits or declarations detailing specific facts showing that a continuance is necessary, unless the court for good cause entertains an oral motion for continuance."

court abused its discretion under Welfare and Institutions Code section 352 in denying a continuance. The record supports a finding Lisa had actual notice of the May 12 hearing date. Moreover, Lisa makes no showing her absence from the juvenile court permanency planning hearing in any way infected the outcome of the ensuing Civil Code section 232 proceedings. (Cf. *In re Nalani C.* (1988) 199 Cal.App.3d 1017, 1028 [245 Cal.Rptr. 264].)

2

### FINDING ANGELA WOULD NOT BE RETURNED TO LISA IN SIX MONTHS

The juvenile court found "return of the minor to the care, custody and control of the parents would create a substantial risk of detriment to the physical or emotional well-being of the minor and there is not a substantial probability that the minor will be returned within six months." (Welf. & Inst. Code, §§ 366.2, subd. (e), 366.25, subd. (c).)

Lisa attacks as without substantial evidentiary support the juvenile court's finding it was not probable Angela would be returned to her within six months. Lisa contends such assertedly unsupported finding "undermines the foundation of the Civil Code section 232 action." Lisa asserts the presence of such finding in a judicially noticeable file created a substantial risk the court in the section 232 proceedings would "unduly rely on this potentially erroneous finding to support its own findings resulting in the freedom from parental custody and control order." ▮ However, the judgment in the section 232 action has rendered moot the matter of the sufficiency of the evidence in the juvenile court proceedings on the issue of the probability of reunification in six months. In freeing Angela from Lisa's custody and control, the court made an independent finding there was clear and convincing evidence satisfying the requirements of section 232, subdivision (a)(7). Lisa's contention the court in the section 232 action may have misused the juvenile court's challenged finding is at most pure speculation.

3

### FINDING ANGELA WAS "ADOPTABLE"

The juvenile court stated Angela "is considered adoptable and the Court orders County Counsel to initiate Civil Code section 232 proceedings . . . ." (Welf. & Inst. Code, § 366.25, subd. (d)(1).)[6]

---

[6] Welfare and Institutions Code section 366.25, subdivision (d), provides in relevant part: "If the court determines that the minor cannot be returned to the physical custody of his or

Lisa attacks as without substantial evidentiary support the juvenile court's finding Angela was "adoptable." Asserting the evidence showed Lisa maintained regular visitation with Angela and Angela would benefit from continuing such relationship (Welf. & Inst. Code, § 366.25, subd. (d)(1)(A)), Lisa contends the juvenile court erred in authorizing the Department to proceed under Civil Code section 232. Lisa further contends the assertedly erroneous factual finding underlying the order of authorization "materially infects the basis on which the section 232 proceeding was instituted." Lisa asserts if Angela was not "adoptable" within the meaning of Welfare and Institutions Code section 366.25, subdivisions (d)(1), the judgment under Civil Code section 232 was "in opposition to the legislative policy [assertedly expressed in Welf. & Inst. Code, § 366.25, subds. (d)(1), (d)(2)] that this minor should not be adopted and that parental rights should not be terminated."[7] However, the judgment in the Civil Code section 232 action has rendered moot the matter of the sufficiency of the evidence in the juvenile court proceedings on the issue of Angela's adoptability including whether Lisa's visitation was regular and whether Angela would benefit from continuing the relationship. In freeing Angela from Lisa's custody and control, the court made an independent finding there was clear and convincing evidence satisfying the requirements of Civil Code section 232, subdivision (a)(7). The court also made independent findings under Civil Code section 239 appointing the Department as Angela's guardian and referring her to the Department for adoptive placement.

We thus conclude there was no juvenile court error of sufficient magnitude to infect the outcome of the ensuing proceedings under Civil Code section 232. (*In re Kristin B., supra,* 187 Cal.App.3d at p. 605.)

---

her parent or guardian and that there is not a substantial probability that the minor will be returned within six months, the court shall develop a permanent plan for the minor. In order to enable the minor to obtain a permanent home the court shall make the following determinations and orders: (1) If the court finds that it is likely that the minor can or will be adopted, the court shall authorize the appropriate county or state agency to proceed to free the minor from the custody and control of his or her parents or guardians pursuant to Section 232 of the Civil Code unless the court finds that any of the following conditions exist:

"(A) The parents or guardians have maintained regular visitation and contact with the minor and the minor would benefit from continuing this relationship."

[7] Welfare and Institutions Code section 366.25, subdivision (d)(2), provides in part: "If the court finds that it is not likely that the minor can or will be adopted or that one of the conditions in subparagraph (A), (B), or (C) of paragraph (1) applies, the court shall order the appropriate county department to initiate or facilitate the placement of the minor in a home environment that can be reasonably expected to be stable and permanent. This may be accomplished by initiating legal guardianship proceedings or long-term foster care."

B

PROCEEDINGS UNDER CIVIL CODE SECTION 232

In appealing the judgment declaring Angela free from her custody and control, Lisa contends the court's finding under Civil Code section 232, subdivision (a)(7), was without substantial evidentiary support. Lisa also contends the court erred in entering her default and in not appointing counsel for her. We affirm the judgment.

1

SUBSTANTIAL EVIDENCE SUPPORTS THE JUDGMENT

Lisa contends there was insufficient evidence to support the judgment under Civil Code section 232, subdivision (a)(7). She contends the juvenile court's orders and findings at the permanency planning hearing may not be used to support the section 232 judgment because errors at the permanency planning hearing invalidated such orders and findings and undermined the foundation of the section 232 proceeding. However, as discussed above, there was no juvenile court error of sufficient magnitude to infect the outcome of the ensuing proceedings under Civil Code section 232. (*In re Kristin B., supra,* 187 Cal.App.3d at p. 605.) Further, in determining Angela should be freed from Lisa's custody and control, the court in the section 232 proceedings made the independent detailed findings required under section 232, subdivision (a)(7). Such findings are supported by ample evidence in the record of the section 232 proceedings. Lisa does not contend any of those specific findings—oral or written—made by the court in the section 232 proceedings is unsupported by substantial evidence.

The record in the Civil Code section 232 proceedings contains the following evidence:

Lisa attended school to the seventh grade, receiving C's and D's. Lisa left school at age 14 because she was pregnant with Angela. Lisa had no additional education or training and had not worked in a sustained fashion. Caesar R. was Angela's father. Caesar and Lisa never married and did not maintain a lasting relationship. Caesar left Lisa before Angela was born. Caesar lived somewhere in Mexico. Despite considerable effort the Department was unable to locate Caesar.

Lisa and Angela depended on relatives to provide them housing because Lisa was unable to maintain an independent living situation for Angela and herself. Sometimes Lisa left Angela at a relative's home for weeks and then,

without notice to the relatives or Angela, moved Angela to another less stable arrangement. In 1984 and 1985 Lisa was arrested numerous times.

In April 1984 Angela and Lisa first came to the Department's attention when Lisa suffered stab wounds and was admitted to a hospital. In May 1984 Lisa made a hysterical call to her welfare eligibility worker stating she had no place to live, no money, and no one to care about her. However, at that time the Department was unable to locate Angela or Lisa. In January 1985 Angela was with Lisa when Lisa was arrested for possessing a controlled substance. In February 1985 a social worker and police officer investigating a child neglect report went to Lisa's residence and found Angela generally neglected and in severe need of dental attention. At that time the Department took Angela into protective custody. Angela has been in foster care ever since.

When first arriving at the foster home, Angela was very unsocialized. Angela was not completely toilet trained, foraged through garbage cans for food, picked up food discarded by strangers, and ate compulsively. Angela complained of frequent toothaches and suffered rampant dental disease, with 14 of her 20 teeth needing extensive dental repair.

In July 1985 the juvenile court adjudged Angela to be its dependent child with placement in foster care. At that time the court adopted a reunification plan for Lisa requiring adequate housing, weekly visitation, and psychological evaluation of Lisa. The plan required Lisa to report progress in counseling and parenting and to remain law-abiding and arrest-free.

In January 1986 at a review hearing the Department reported Lisa had made little progress on the reunification plan. Lisa had attended only three parenting class sessions and had not yet sought counseling. After evaluating Lisa psychologically, Dr. Hurwitz concluded she appeared to suffer from a "chronic and markedly severe personality disorder with mixed features, including emotional instability and volatility, generalized poor functioning in most areas, and an intrapersonal disturbance that appears to be of paranoid proportions." After hearing the court continued Angela as a dependent child with foster home placement.

In May 1986 the social worker urged Lisa to continue counseling at Pathways where she had completed only two sessions.

In June 1986 the social worker informed Lisa that overnight visits with Angela would be halted because Angela regressed afterward; only three-hour visits on Saturdays and Sundays would be allowed.

In August 1986 at a review and permanency planning hearing the Department reported Lisa had not complied with significant areas of the reunification plan. The social worker recommended a Civil Code section 232 action to free Angela from Lisa's custody and control. The Department noted a hearing aid was helping Angela's speech and language; her extreme dental neglect was being remedied by a dentist, a healthful diet and good hygiene. After hearing, the court continued Angela as a dependent child with foster home placement. The court also adopted a reunification plan requiring that Lisa attend counseling on issues of setting behavioral limits and sound nutritional practices contributing to Angela's health; obtain suitable housing appropriate for Angela; visit Angela weekly, if possible by herself, arriving timely and returning Angela on time; participate in psychotherapy, receive a positive recommendation from her therapist, arrive on time, and reschedule in advance appointments needing canceling; involve herself in Angela's medical and dental care and special educational program; become fully knowledgeable about Angela's hearing aids; and keep the social worker advised of her current address and phone number. Lisa signed the reunification plan.

In September 1986 Lisa was arrested for possessing a controlled substance.

In October 1986 Lisa was arrested for possessing methaqualone.

Near the beginning of December 1986, Lisa dropped out of Angela's life. Lisa had visited Angela until December 1986 but made only one visit in the next two months. Lisa was unemployed, dropped out of her nurse's aide training program, and dropped out of her counseling program at Pathways. Lisa did little follow-up when her attorney referred her for home services.

In February 1987 clinical psychologist Block—Angela's therapist—told the social worker results of therapy indicated role reversal on the part of Angela toward Lisa and continued regressive behavior by Angela after visits with Lisa. Block recommended Angela continue in her current foster home placement and long-term planning should include permanent adoptive placement.

In February and March 1987 the review and permanency planning hearings were continued.

In March 1987 Lisa was arrested for battery.

In April 1987 Dr. Volcani reassessed Angela psychologically. Volcani had evaluated Angela and Lisa in August 1986. After reassessing the

relationship between Lisa and Angela, Volcani recommended freeing Angela from Lisa's custody and control.

In April 1987 the social worker reported Angela was tearful after visits with Lisa; Lisa was reportedly arrested for destroying her own mother's motel apartment, attacking her, and bruising her arms and neck while Lisa was intoxicated and out of control; and Lisa was evicted from her downtown hotel for heavy drinking, vulgarity, loudness and going from one man's bedroom to another.

In April 1987 the review and permanency planning hearing was again continued. Before continuing the hearing, the court held a chambers conference about problems of visitation. The court ordered supervised visits in a neutral setting with close monitoring by the Department. The court also ordered visitation would be suspended if Lisa made threatening or disparaging remarks during visitation.

In May 1987 at the contested permanency planning hearing, the social worker testified reunification was doubtful because of Lisa's failure to complete the reunification plan. The social worker stated Lisa had participated in treatment but no parenting classes; Lisa had not established adequate housing; and Lisa did not fully participate in medical, dental and educational plans for Angela. Volcani testified during his first evaluation Angela appeared to be attached to Lisa and showed some ambivalence to the parent-child roles; during the second evaluation Angela presented more blurring of the parent-child role and saw herself in a parental role or a role reversal. Volcani also stated he had reservations about Angela's continued contact with Lisa; and Angela had the emotional resources necessary to deal with a break in the mother-child relationship. Angela's therapist Block testified Angela suffered confusion concerning her role with Lisa; Angela's main attachment was to her foster mother; and Angela would be able to sever her relationship with Lisa without detriment. Angela's foster mother testified Lisa had visited fairly regularly for three months; then quit over the past three months; and visits with Angela and Lisa usually resulted in Angela displaying problems at school. In chambers Angela told the court she wanted to remain in the foster home. After hearing, the juvenile court directed the Department to pursue the Civil Code section 232 action and ordered that visitation between Lisa and Angela would be at the social worker's discretion. The Department suspended visitation.

In June 1987 the social worker told Lisa two prearranged five-minute telephone calls to Angela were authorized. Lisa made only one. The social worker urged Lisa to continue contact with Angela.

In October 1987 the social worker asked Lisa to come in and discuss the reunification plan. Lisa called the social worker and made an appointment. On the day of the appointment Lisa called the social worker to cancel. The next day Lisa called the social worker to schedule another appointment for three days later. On the day of the rescheduled appointment Lisa did not appear or call the social worker.

In November 1987 at a review hearing the court continued Angela as a dependent child with foster home placement. The court ordered visitation between Angela and Lisa would be permitted only if Angela's therapist stated such visits would benefit Angela.

In December 1987, although personally served with a citation, Lisa did not appear at the Civil Code section 232 hearing.

Later in December 1987 the foster mother told the social worker that Angela had made considerable progress in elementary school; after visits with Lisa, Angela commonly returned to school wearing makeup and "bizarre clothes" and exhibiting severely regressed behavior including fighting, kicking, clawing at fellow students and wetting her pants; during such times Angela had much anxiety; and Angela gradually improved until another visit with Lisa after which she again regressed severely. Angela told the probation officer she wanted to be adopted by a woman working at her school; she did not like or love Lisa anymore because Lisa took drugs and was "a little mean"; she did not want to live with Lisa because Lisa had no clothes or money; and she had seen Lisa smoke and drink a lot.

In January 1988 the social worker reported Angela appeared to be thriving in the foster home and had benefited from reconstructive dentistry and speech and hearing therapy.

In sum, the evidence amply showed Lisa failed and in the future was likely to fail to maintain an adequate parental relationship with Angela. The evidence also amply showed return to Lisa would be detrimental to Angela. Lisa did not sufficiently comply with the reunification plan. Lisa was unable to provide a home, care or control for Angela. Lisa had drug and alcohol problems. Angela developed behavioral problems when around Lisa. Angela wished to be adopted. Expert psychological opinion supported terminating Lisa's parental rights and placing Angela for adoption.

The court's findings under Civil Code section 232, subdivision (a)(7), were supported by substantial evidence.

2

## ENTRY OF LISA'S DEFAULT WAS PROPER

 Lisa contends the court erred in entering default because in obtaining the default the Department did not comply with the requirements of Code of Civil Procedure section 585 et seq.[8] However, Code of Civil Procedure section 585 et seq. do not apply here. No responsive pleading is required in Civil Code section 232 proceedings. Further, by their terms the default provisions of Code of Civil Procedure section 585 et seq. apply specifically to "actions." A proceeding for freedom from parental control and custody is not an "action" but rather a "special proceeding" created by statute. (*In re Peterson* (1943) 56 Cal.App.2d 791, 795 [133 P.2d 831]; Code Civ. Proc., §§ 22, 23.) Special proceedings are not subject to the provisions of the Code of Civil Procedure relating to the trial of civil actions except where—unlike here—such provisions are specifically made applicable. (*Boggs* v. *North American B. & M. Co.* (1937) 20 Cal.App.2d 316, 319 [66 P.2d 1253].)[9]

The statutory scheme for freeing a minor from parental custody and control (Civ. Code, § 232 et seq.) constitutes "an expeditious method for resolution of the status of the minor which at the same time preserves due process rights of the persons from whom the minor may be declared control-free." (*In re Manuel J., supra,* 150 Cal.App.3d at p. 520.) Here Lisa was afforded the due process rights of notice and opportunity to be heard. (*W. E. J.* v. *Superior Court* (1979) 100 Cal.App.3d 303, 313 [160 Cal.Rptr. 862], disapproved on another point in *In re Baby Girl M.* (1984) 37 Cal.3d 65, 72 [207 Cal.Rptr. 309, 688 P.2d 918].) On October 26, 1987, Lisa was

---

[8] Under Code of Civil Procedure section 585, subdivision (b), where the defendant has been served *but has not timely filed an answer or other responsive pleading,* the defendant's default shall be entered upon written application by the plaintiff.

Code of Civil Procedure section 587 provides a plaintiff's application for entry of default under section 585, subdivision (b), shall include an affidavit stating a copy of the application has been mailed to the defendant's attorney of record or, if none, to the defendant at her last known address and the date of mailing such copy. Section 587 also provides no default shall be entered under section 585, subdivision (b), unless such affidavit is filed.

[9] Civil Code section 238 provides: "Any order and judgment of the court declaring a minor person free from the custody and control of any parent or parents under the provisions of this chapter shall be conclusive and binding upon such minor person, upon such parent or parents and upon all other persons who have been served with citation by publication or otherwise as provided in this chapter. After making such order and judgment, the court shall have no power to set aside, change, or modify it, but nothing in this section shall be construed to limit the right to appeal from such order and judgment."

In *In re Manuel J.* (1984) 150 Cal.App.3d 513, 519-521 [197 Cal.Rptr. 777], the court held Civil Code section 238 precluded the court in a Civil Code section 232 proceeding from considering a motion for relief from default under Code of Civil Procedure section 473.5.

personally served with a citation to appear on December 4, 1987, to show cause why Angela should not be declared free from parental custody and control. (Civ. Code, §§ 235, 237.5.) When Lisa did not appear at the noticed hearing on December 4, the court properly entered her default.

Lisa also contends the court erred in holding the prove-up hearing on January 15, 1988, without giving her the ·15 days' notice required under Code of Civil Procedure section 594.[10]　■　However, notice of date of trial provided for by section 594 need not be given to a defaulting defendant. (*Uplinger* v. *Yonkin* (1920) 47 Cal.App. 435, 437 [190 P. 822].)

3

## APPOINTED COUNSEL NOT STATUTORILY OR CONSTITUTIONALLY REQUIRED

Lisa meritlessly contends the court's failure to appoint counsel for her constituted error under Civil Code section 237.5 and denied her due process right to appointed counsel.

### NO STATUTORY VIOLATION

Civil Code section 237.5, subdivision (b), provides in relevant part: "If a parent *appears* without counsel and is unable to afford counsel, the court shall appoint counsel for the parent, unless such representation is knowingly and intelligently waived." (Italics added.) Section 237.5 "was added to provide several procedural safeguards and to mandate the appointment of counsel for indigent parents in [Civil Code] section 232 proceedings." (*In re Jacqueline H.* (1978) 21 Cal.3d 170, 174 [145 Cal.Rptr. 548, 577 P.2d 683].) In enacting section 237.5, the Legislature recognized the severity of the parent's possible loss in section 232 proceedings. (*Id.* at p. 176.)

On December 4, 1987, the court entered Lisa's default when she failed to appear at the hearing despite personal service of a citation. On December 10, 1987, the probation officer met with Lisa at Lisa's request. Lisa told the probation officer she desperately needed to keep her current job and did not want her employers to know about the Civil Code section 232 case. Lisa told the probation officer about her attempts to comply with the reunification plan. Lisa said she would like to be able to see Angela because Angela knows who she is and is bonded to her. Lisa also told the probation

---

[10]Code of Civil Procedure section 594, subdivision (a), provides a party may bring an issue to trial in the absence of the adverse party provided the adverse party has had 15 days' notice of such trial.

officer she hoped for an "open adoption" allowing her to meet Angela's adoptive parents and keep current on Angela's whereabouts and welfare. Lisa now characterizes such comments as effectively notifying the court before the prove-up hearing that she desired to oppose the section 232 petition but had been unable to attend the December 4 hearing for a valid reason. Lisa asserts the court at the prove-up hearing upon reviewing the probation report should have inferred she was absent from the December 4 hearing due to circumstances surrounding her job. Lisa contends section 237.5 entitled her to appointed counsel under such circumstances and the court erred in not appointing counsel after reading the probation report before the prove-up hearing.

Lisa relies on *In re Rodriguez* (1973) 34 Cal.App.3d 510 [110 Cal.Rptr. 56] and *Adoption of Hinman* (1971) 17 Cal.App.3d 211 [94 Cal.Rptr. 487]. However, such reliance is unavailing. Civil Code section 237.5 requires the court to appoint counsel for a parent who *appears* without counsel and is unable to afford counsel. Despite personal service of the citation, Lisa did not appear at the hearing on December 4. *Rodriguez* and *Hinman* arose under a former version of Civil Code section 232 which did "not expressly limit the obligation of the court to appoint counsel for indigent parents to those cases wherein the parents are physically present in court." (*Adoption of Hinman, supra,* at p. 216; also *In re Rodriguez, supra,* 34 Cal.App.3d at pp. 512-513.) Further, the parents in *Rodriguez* and *Hinman* were not in default when they notified authorities they desired to contest the petitions. Instead, the parents, though incarcerated, communicated such desire to authorities before the hearing dates noticed in the citations. (*In re Rodriguez, supra,* at pp. 512-513; *Adoption of Hinman, supra,* 17 Cal.App.3d at p. 214.)

On December 4, because Lisa was not present at the noticed hearing, the court had to make its determination on the basis of such information as it had. (*Adoption of Hinman, supra,* 17 Cal.App.3d at p. 217.) Despite personal service of notice of such hearing, Lisa did not notify authorities beforehand of any desire to contest the petition, any inability to attend the hearing or any wish that counsel be appointed. Instead, Lisa simply defaulted. Under these circumstances the court reasonably found Lisa had no desire to contest the petition and properly entered her default.

Further, unlike the incarcerated parents in *In re Rodriguez, supra,* 34 Cal.App.3d 510, and *Adoption of Hinman, supra,* Lisa has not shown circumstances beyond her control made her unable to appear at the noticed hearing. Nothing in Lisa's statements in the probation report available to the court at the January 15 prove-up hearing constituted grounds for setting aside her default.

■ In sum, Civil Code section 237.5, subdivision (b), requires the court to appoint counsel for an indigent parent who *appears* without counsel. There was no statutory violation here because Lisa did not appear at the noticed hearing, excuse her nonappearance, or otherwise seek appointment of counsel.

## NO DUE PROCESS VIOLATION

Lisa meritlessly contends the court denied her due process right to appointed counsel. Lisa was afforded due process.

■ "There is no federal constitutional right per se to be represented by counsel in all parental termination proceedings. (*Lassiter* v. *Department of Social Services* (1981) 452 U.S. 18, 31-34 [68 L.Ed.2d 640, 652-654, 101 S.Ct. 2153].) *Lassiter, supra,* held the existence of a federal right to counsel is a matter for case by case adjudication. (*Ibid.*)" (*In re Nalani C., supra,* 199 Cal.App.3d at p. 1026.)[11] California provides by statute—Civil Code section 237.5, subdivision (b)—the right to appointed counsel in proceedings to free a minor from the parent's custody and control.[12] Thus, the primary inquiry here is whether the court violated Lisa's statutory right to counsel. (*Ibid.*) As discussed above, this record discloses no statutory violation.

"Civil Code section 237.5 is legislative recognition of the fundamental rights involved when the state seeks to separate parents from their child." (*In re Joyleaf W.* (1984) 150 Cal.App.3d 865, 868 [198 Cal.Rptr. 114].) "[I]n enacting section 237.5, the Legislature intended to insure indigent parents had a right to counsel in section 232 proceedings to protect their interests." (*In re Nalani C., supra,* 199 Cal.App.3d at p. 1027.) Nothing in this record warrants a conclusion due process requires more than was available to Lisa under Civil Code section 237.5. Despite notice to Lisa the court would appoint an attorney for her if she appeared at the December 4 hearing and was unable to afford counsel, Lisa did not appear. Neither did she otherwise notify authorities—either before or after entry of her

---

[11] In *In re Jay R.* (1983) 150 Cal.App.3d 251, 260 [197 Cal.Rptr. 672], the court held "due process requires appointment of counsel for indigent noncustodial parents accused of neglect in stepparent adoption proceedings, if indigency is demonstrated and *appointment of counsel is requested.*" (Italics added, fn. omitted.)

[12] Principles of due process and equal protection prohibit the state from taking a minor child from a mother without notice to her and a hearing on her fitness. (*W. E. J.* v. *Superior Court, supra,* 100 Cal.App.3d at p. 313, citing *Stanley* v. *Illinois* (1972) 405 U.S. 645 [31 L.Ed.2d 551, 92 S.Ct. 1208].) "The California law meets this standard. In a proceeding to terminate parental control a citation must be served on the parents and they are entitled to appear with counsel, which will be provided at state expense if a parent is not able to afford counsel. ([Civ. Code] §§ 235, 237.5.)" (*W. E. J.* v. *Superior Court, supra,* at p. 313.)

default—of any desire for appointment of counsel. (*In re Jay R., supra,* 150 Cal.App.3d at p. 260.)

Lisa was not denied due process.

DISPOSITION

The appeal in D006293 is dismissed. The judgment in D007891 is affirmed.

Todd, J., and Huffman, J., concurred.