[Nos. G001503, G001504. Fourth Dist., Div. Three. Nov. 26, 1986.]

In re KRISTIN B. et al., Persons Coming Under the Juvenile Court Law.
ORANGE COUNTY DEPARTMENT OF SOCIAL SERVICES,
Plaintiff and Respondent, v.
RICHARD B. et al., Defendants and Appellants.

[No. G002410. Fourth Dist., Div. Three. Nov. 26, 1986.]

In re KRISTIN B. et al., Minors.
ORANGE COUNTY DEPARTMENT OF SOCIAL SERVICES,
Petitioner and Respondent, v.
RICHARD B. et al., Objectors and Appellants.

598

## Counsel

Robert Phillip App, under appointment by the Court of Appeal, for Defendants and Appellants and Objectors and Appellants.

Adrian Kuyper, County Counsel, Wanda S. Florence and Claudia L. Cowan, Deputy County Counsel, for Plaintiff and Respondent and Petitioner and Respondent.

## Opinion

**TROTTER, P. J.**—Richard and Carole B. appeal a judgment declaring their daughters, Sarah, born February 25, 1981, and Kristin, born April 13, 1982, free from their custody and control. (Civ. Code, § 232, subd. (a)(7).) They contend the court erred in permitting the children's grandparents to intervene as parties. In a separate appeal the parents attack a juvenile court permanency planning order directing the initiation of termination proceedings. They also claim they were denied the effective assistance of counsel early in the juvenile court proceedings as a result of a conflict of interest. On our own motion the appeals have been consolidated.

### I.

On December 7, 1982, Richard and Carole entered a plea of nolo contendere to allegations they physically abused Kristin and failed to provide both children with a proper home.[1] The court found these allegations to be

---

[1] The dependency petitions alleged the children's home was "an unfit place for [them] by reason of the neglect and physical abuse of [their] parents in that on or about December 2, 1982, [Kristin] was admitted to University of California, Irvine, Medical Center in a comatose state with the following unexplained injuries, to wit: excess fluid in the head requiring drainage of fluids, swelling of the head with separated sutures due to pressure, hemorrhaging of the retinas of both eyes, healing fractures of right third finger, the lower left leg bone and a possible fracture of the left hip bone; further, the diagnosis of the attending physician is battered child."

The petitions further alleged Sarah and Kristin were provided "with a home consisting of one room with no refrigeration for food, no bed for [either child], very little food available, and with chemicals, aerosol cans, a plugged in electrical cord, open cans with jagged edges and other dangerous items in easy reach of the minor[s]."

true and concluded the minors were persons described in Welfare and Institutions Code section 300, subdivisions (a) and (d).

At the dispositional hearing the following month, Sarah and Kristin were declared dependent children of the juvenile court. (Welf. & Inst. Code, § 300, subd. (d).) The court also approved a case plan submitted by the social worker providing, among other things,[2] for the children's placement in the Colorado home of the children's paternal grandparents.

A six-month review hearing was held July 1, 1983. A deputy public defender was appointed to represent Richard and Carole after Attorney Owen Petersen, who had represented them at the two earlier hearings, failed to appear. The court also approved a reunification plan requiring the parents to successfully complete a parenting class, an alcohol abuse counseling program, and a child abuse counseling program. Pursuant to the plan, reunification would be considered only after Richard and Carole completed these programs, maintained stable housing for at least six months, obtained a suitable source of income to support themselves and the minors, and demonstrated satisfactory progress in therapy. Visitation would be authorized by the DSS after the parents enrolled in these programs. Meanwhile, Sarah and Kristin were to remain in the care of their grandparents.

A second six-month review hearing scheduled for December 30th was subsequently advanced to December 5th to accommodate a permanency planning hearing. On the revised date, Attorney Jayne Travis appeared at Petersen's behest, and she and the public defender stipulated to continue the matter to January 17, 1984, to allow the children's paternal grandparents time to retain counsel. Then, on the continued hearing date, Travis appeared on the grandparents' behalf.

It appears that Petersen was initially contacted by Richard's father and stepmother who asked him to represent Richard and Carole. But in December 1983 the elder B.'s informed Petersen they wanted to hire an attorney of their own. Thus, Petersen asked Travis, a sole practitioner who shared office

---

[2]Richard and Carole were to enroll in a counseling program and sign a release enabling the Department of Social Services (DSS) to receive information concerning their progress and attendance; provide regular and follow up medical care for the minors; successfully complete an alcohol abuse counseling program; and participate with the minors in public health nursing programs.

space with him, to appear on his behalf to request a continuance for this purpose.[3]

Evidence presented at the combined six-month review and permanency planning hearing disclosed that Richard and Carole had maintained virtually no contact with their daughters since the children had been placed with their grandparents. The case worker acknowledged that parent-child contact is essential to achieve reunification and that his request for authorization of funds to transport the minors from Colorado to California for this purpose had been denied. But, in his opinion, there was no likelihood of reunification, in any event, because of the parents' continued refusal to accept responsibility for Kristin's injuries.[4] Medical testimony was offered indicating "[i]f the person that's doing the abuse doesn't admit it, it's very unlikely that treatment is going to be helpful." Furthermore, the parents had failed to enroll in an alcohol abuse program in accordance with the reunification plan.

At the conclusion of the hearing, the court found return of the children to the parents would create a substantial risk of detriment to their physical or emotional well-being and there was not a substantial probability the children would be returned to their parents' physical custody within six months. (Welf. & Inst. Code, § 366.25, subd. (c).) It also found the children were adoptable and ordered the county counsel to initiate an action pursuant to Civil Code section 232. (Welf. & Inst. Code, § 366.25, subd. (d)(1).) The parents' appeal "from the judgment made and entered . . . on January 19, 1984, in favor of petitioner, and the whole thereof," was filed March 19, 1984.

---

[3]Travis testified to these facts during the termination trial after the question of a potential conflict of interest was raised for the first time.

Just as Travis was about to begin her cross-examination of a witness, Richard's and Carole's attorney moved to disqualify her from further participating on behalf of the grandparents. It had been counsel's understanding Travis was "out of Owen Petersen's office" and that "Petersen represented not only the paternal grandparents, who are the intervenors in this case, but also [the parents] at the original hearing . . . ." He had just learned of Travis's involvement, and objected to her participation "because of [the parents'] attorney-client privilege with her as far as [they say] it exists." According to Travis, when she appeared in December 1983 she was representing Petersen, "who had said that a continuance would be necessary because there was a conflict."

Based on Travis's testimony, the motion was denied.

[4]The record indicates that prior to Kristin's birth Richard and Carole had decided for financial reasons to place the baby for adoption. Six months later Kristin's prospective adoptive father was arrested for indecent exposure and the child was returned to her natural parents. Carole believed Kristin's injuries occurred during that six-month period; however, she and Richard delayed seeking medical treatment because they had not yet obtained insurance.

A petition for freedom from parental control was filed May 13, 1984. At a hearing held October 30th, the court granted, over the parents' objection, the grandparents' motion to intervene as parties.

Trial proceeded as scheduled on November 20th. At its conclusion the court, "after listening to all of the evidence and particularly the testimony of the [parents] and the maternal grandparent," determined it had no alternative but to find it is in the children's best interests to free them from their parents' custody and control. Judgment was entered accordingly, and the parents' appeal followed.

## II.

The DSS contends the appeal from the juvenile court order should be dismissed as moot. The thrust of its argument is that entry of judgment terminating appellants' parental rights renders it impossible for this court to grant any effectual relief. (See, e.g., *City of Los Angeles* v. *County of Los Angeles* (1983) 147 Cal.App.3d 952, 958 [195 Cal.Rptr. 465].) We disagree.

An appeal from a juvenile court order is not automatically moot simply because a proceeding terminating parental rights has been concluded and is attacked on appeal. True, "[a] final judgment in a related proceeding may determine all the issues in a pending appeal and render it moot. [Citations.] And a final judgment may render moot an appeal from a prior order. [Citations.]" (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 521, p. 503.) But a judgment in a Civil Code section 232 action is not final until the culmination of the appellate process. (See Civ. Code, § 238.)

Nor is it necessarily true, as appellants urge, that the propriety of juvenile court proceedings "is of crucial importance . . . to the validity of the subsequent termination proceedings" when the latter proceedings rely directly on the children's status as dependents of the juvenile court.

The interrelationship of juvenile court dependency proceedings and proceedings to terminate parental rights was addressed in *In re Shannon W.* (1977) 69 Cal.App.3d 956 [138 Cal.Rptr. 432]. There, a Civil Code section 232 petition was filed during the pendency of juvenile court dependency proceedings. After the trial court granted the petition, the social services agency asked the juvenile court to terminate jurisdiction. The mother objected, claiming the termination proceedings were void because of the pendency of the juvenile court proceedings. The juvenile court ruled the mother was not entitled to a hearing before the initiation of section 232 proceedings.

■ The appellate court agreed, noting that since 1961 when the Juvenile Court Law underwent a massive face-lift, "[a] [Civil Code] section 232 proceeding . . . does not conflict or interfere with the temporary custodial arrangements which the juvenile court may have made in the interests of the child. It is designed to sever the parental relationship as a first step in accomplishing the adoption of the child which, it is hoped, will make further juvenile court jurisdiction unnecessary." (*In re Shannon W., supra,* 69 Cal.App.3d at p. 962.)

Thus, the two proceedings are separate and distinct, each serving an entirely different purpose. And for this reason, error in the conduct of a juvenile court proceeding arguably has no bearing on a subsequent termination proceeding. However, we perceive several instances where the contrary would be true.[5] For example, where the termination judgment is based solely upon testimony improperly ruled admissible at a permanency planning hearing, the judgment's propriety is questionable. ■ ■ ■ ■ And where the superior court's jurisdiction to entertain a petition for freedom from parental control is predicated on a child's dependency status or out-of-home placement (see, e.g., Civ. Code, § 232, subds. (a)(2) & (a)(7))[6] which arose out of an erroneous jurisdictional finding of the juvenile court,[7] the ultimate judgment may be a nullity.

---

[5]But see *In re Joshua S.* (1986) 186 Cal.App.3d 147 [230 Cal.Rptr. 437] where the court, in dictum, said "[t]ermination of a parent's rights under Civil Code section 232 will effectively moot any errors occurring at the juvenile proceedings. [Citations.]" (*Id.,* at p. 154, citing *In re Terry E.* (1986) 180 Cal.App.3d 932 [225 Cal.Rptr. 803] and *In re Lisa M.* (1986) 177 Cal.App.3d 915 [225 Cal.Rptr. 7].) However, in none of these cases was an appeal taken from *both* a juvenile court order *and* a termination judgment.

The issue in *Joshua S.* was the appealability of a juvenile court order terminating reunification efforts; the opinion is silent as to whether a Civil Code section 232 proceeding was ever instituted. In *Lisa M.,* a mother's appeal from a juvenile court order was dismissed as moot "in view of the superseding [Civil Code section] 232 proceedings culminating in a judgment of parental termination." (*In re Lisa M., supra,* 177 Cal.App.3d at p. 919.) However, no appeal was taken from the termination judgment which had since become final. (*Id.,* at p. 918.) Finally, in reviewing a mother's appeal from a judgment terminating parental rights, the court in *Terry E.* was careful to point out that certain "disturbing factors" relative to the earlier juvenile court proceedings were "nondeterminative." (*In re Terry E., supra,* 180 Cal.App.3d at pp. 946-948.)

[6]Subdivision (a)(2) refers to a child under the age of 18 years who "has been a dependent child of the juvenile court under any subdivision of Section 300 of the Welfare and Institutions Code and the parent or parents have been deprived of the child's custody for one year prior to the filing of a petition pursuant to this section." (Civ. Code, § 232, subd. (a)(2).)

Subdivision (a)(7) is applicable to a child "[w]ho has been in out-of-home placement under the supervision of the juvenile court . . . for a one-year period . . . ." (Civ. Code, § 232, subd. (a)(7).)

[7]Upon finding the allegations of a dependency petition to be true and concluding the minor comes under an appropriate subdivision of Welfare and Institutions Code section 300 (Welf. & Inst. Code, § 355), the juvenile court may invoke its jurisdiction to declare the minor a dependent of the court. (Welf. & Inst. Code, § 360.)

Jurisdictional error in the juvenile court is not, however, always subject to review. Indeed,

██ ██ ██ ██ ██ We therefore hold that where a judgment terminating parental rights is challenged on appeal, an earlier appeal arising out of a juvenile court dependency proceeding is not moot *if* the purported error is of such magnitude as to infect the outcome of the ensuing termination action *or* where the alleged defect undermines the juvenile court's initial jurisdictional finding.[8] Consequently, the question of mootness must be decided on a case-by-case basis.

Applying these principles here, we conclude two of appellants' three claims are moot. In making this determination we look to the nature of the error alleged in the appeal from the termination judgment. Presumably, any purported flaw in the juvenile court proceedings which may have tainted the termination proceeding would also be raised in the appeal from the ultimate judgment. Here, appellants do not allege error which might have flowed from any deficiencies in the juvenile court proceedings. The only question presented relates to the propriety of the court's ruling permitting the children's grandparents to intervene. Thus, we do not reach appellants' contentions there is insufficient evidence to support the juvenile court's finding it was improbable reunification would occur within six months, and they were prejudiced by the court's failure to advise them of the consequences of failing to maintain contact with the children.

██ Appellants' claim of ineffective assistance of counsel may, however, be viable in that it impugns the juvenile court's initial jurisdictional finding.[9] It is appellants' position Petersen was really acting on the grandparents' behalf when he suggested the parents enter nolo pleas; thus, but for that recommendation[10] the court would not have found the allegations of the

---

the existence of prior dependency proceedings is not a prerequisite to filing a petition for termination of parental rights. (See, e.g., Civ. Code, § 232, subds. (a)(1), (a)(4), (a)(5) & (a)(6).)

[8]By so holding we do not mean to imply that relief from an erroneous ruling of the juvenile court must await review of the judgment entered in the termination proceeding. Extraordinary relief, including a stay of pending termination proceedings, may be obtained upon a proper showing the appeal remedy is inadequate.

[9]Any question as to appellants' right at this juncture to make this challenge was answered in *In re Gregory M.* (1977) 68 Cal.App.3d 1085, 1090 [137 Cal.Rptr. 756]: "At the dispositional hearing the juvenile court determines what should happen to the juvenile who was found, in the jurisdictional hearing, to be a [dependent] of the court. The dispositional hearing cannot be thought of in isolation from the other proceedings in the case because the disposition imposed is directly related to what the court found in the jurisdictional hearing."

It follows that an appeal from a dispositional order embodies an attack on the initial jurisdictional finding. Here, the notice of appeal indicates appellants were challenging the January 19, 1984, order, "and the whole thereof." This is sufficient.

[10]Carole testified at trial that she and Richard pleaded no contest after Petersen told them they "more or less didn't have any choice." Further, she said Petersen informed them "there was a possibility that . . . if [they were found] guilty, that [they] would go to prison and that [they'd] lose [the children] forever."

dependency petitions to be true. And, if the *juvenile* court erroneously obtained jurisdiction in the first instance, the *superior* court's jurisdiction to terminate parental rights pursuant to Civil Code section 232, subdivision (a)(2) or (a)(7),[11] is at issue.

■ Initially, we reject the DSS' contention appellants cannot now complain because they failed to assert a conflict of interest in the juvenile court. As phrased, the precise issue on appeal pertains to the adequacy of counsel which is potentially demonstrated in an appellate record without a specific objection. Indeed, a conflict which undermines the constitutional right to the effective assistance of counsel requires a knowing and intelligent waiver. (*Maxwell* v. *Superior Court* (1982) 30 Cal.3d 606, 620 [180 Cal.Rptr. 177, 639 P.2d 248, 18 A.L.R.4th 333].) Here, there is nothing in the record indicating Richard and Carole waived any potential conflict.

However, the law is unsettled as to whether a claim of ineffective assistance of counsel is cognizable on appeal from a juvenile court order. In recent months, two appellate courts have expressed diametrically opposing views on the question.

In *In re Christina H.* (1986) 182 Cal.App.3d 47 [227 Cal.Rptr. 41], the court analogized a dependency hearing under Welfare and Institutions Code section 300 to a proceeding terminating parental rights under Civil Code section 232 and, relying in part on the Third District's opinion in *In re Christina P.* (1985) 175 Cal.App.3d 115, concluded "even though dependency is a civil matter [*In re Michael S.* (1981) 127 Cal.App.3d 348 [179 Cal.Rptr. 546]], indigent parents . . . have the right to effective assistance of counsel where such counsel is appointed." (*In re Christina H., supra,* 182 Cal.App.3d at p. 50.) The court then went on to say the right attaches even where counsel is privately retained, there being "no reason why it should not." (*Ibid.*)

But in *In re Ammanda G.* (1986) 186 Cal.App.3d 1075 [231 Cal.Rptr. 372], the Third District pointed out that in deciding *In re Christina P.* it was "careful to limit [its] holding . . . to Civil Code section 232 hearings, where . . . the 'parent's interest in the accuracy and justice of the decision to terminate his or her parental status is . . . a commanding one.' [Citation.] [¶] Section 300 hearings do not terminate parental status and thus, do not give rise to a right to counsel on due process grounds. As *Christina H.* observes, the right to have counsel appointed for indigent parents in section 300 hearings arises from California Rules of Court, rule 1334 (c). Thus,

---

[11]The Civil Code section 232 petition alleged Sarah and Kristin were dependent children of the juvenile court within the meaning of these subdivisions. See footnote 6, *ante.*

the right to appointed counsel here is statutory and not . . . constitutional. It is only when 'an indigent is entitled to counsel *on due process grounds*' [citations] that the right to effective assistance of counsel arises." (*In re Ammanda G., supra,* 186 Cal.App.3d at pp. 1079-1080, italics in original.)

■ Nevertheless, even were we to agree with the *Christina H.* panel and conclude there is a constitutional right to the effective assistance of counsel at juvenile dependency proceedings, appellants have failed to establish they were denied such a right. The fact Petersen appeared on the parents' behalf at the grandparents' behest does not, without more, indicate the attorney was serving the interests of the grandparents when he recommended that Richard and Carole refrain from contesting the allegations of the dependency petitions. Moreover, assuming the criteria for determining effective assistance of counsel in criminal proceedings is applicable in dependency proceedings (cf. *People* v. *Fosselman* (1983) 33 Cal.3d 572, 584 [189 Cal.Rptr. 855, 659 P.2d 1144]; *In re Christina P., supra,* 175 Cal.App.3d at p. 130; *In re R. S.* (1985) 167 Cal.App.3d 946, 969 [213 Cal.Rptr. 690]), appellants have failed to allege they would not otherwise have entered a no contest plea. Consequently, appellants' dissatisfaction with their attorney has no bearing on the trial court's jurisdiction to free the children from their custody and control.

### III.

Finally, we turn to appellants' contention the children's grandparents should not have been permitted to intervene as parties. They claim the intervention "resulted in two sets of parties, the [DSS] and the foster parents, both expressing identical positions, 'ganging up' on parents forced to defend against both." We cannot agree.[12]

---

[12]The DSS takes the position appellants conceded at trial that the grandparents had a right to intervene and be represented by counsel.

The record discloses that at the October 30th hearing the judge himself initially opposed the motion but acknowledged he could not deny it on that basis. At that juncture Attorney Gary Proctor, on behalf of the parents, voiced an objection on the ground allowing the grandparents to intervene as parties would only increase the time necessary to litigate the matter. Travis, on behalf of the grandparents, replied by pointing out her clients (who were also the prospective adoptive parents) not only had an interest in the outcome but had already participated at the permanency planning hearing. The court then indicated it would grant the motion "with the understanding [Travis] won't ask any questions . . . ." And when Proctor retorted, "[t]hat never happens," the court said, "I'll limit it. I'll grant the motion."

At trial, however, Richard and Carole were represented by Dennis McNerney, who had been appointed the previous August. McNerney, in arguing for Travis's disqualification, acknowledged he had no objection to the paternal grandparents intervening because "they have every right to do so."

We need not decide whether the parents' objection was waived based upon this subsequent statement of trial counsel because the motion was properly granted in any event.

Appellants' reliance on *In re Christina L.* (1981) 118 Cal.App.3d 737 [173 Cal.Rptr. 722] is misplaced. There, the trial court *refused* to allow the foster parents to appear as parties with the right of representation by counsel. The appellate court, distinguishing *Katzoff* v. *Superior Court* (1976) 54 Cal.App.3d 1079 [127 Cal.Rptr. 178], concluded there was no error because the case "did not involve conflicting interests between [the social services agency] and the foster parents, who wanted to adopt the minor. Here, both favored removal of the minor from the custody and control of her natural parents." (*In re Christina L., supra,* 118 Cal.App.3d at p. 746.) The case does not hold intervention is improper where the interests of the foster parents are aligned with those of another party.

■ Recently, in *Christina K.* v. *Superior Court* (1986) 184 Cal.App.3d 1463 [229 Cal.Rptr. 564], we reiterated that "when foster parents are de facto parents they have a right to standing in all dependency proceedings." (*Id.,* at p. 1469.) And, acknowledging that all foster parents do not have such a right, we concluded: "The juvenile court must determine if the foster parents have cared for the minor on a day-to-day basis. . . . The court should also consider the unique vantage point of the foster parents vis-à-vis the information they are able to provide to the court." (*Ibid.*)

It is of no moment *Christina K.* was decided in the context of juvenile court dependency proceedings. The right to standing should not be defined solely by the nature of the proceeding in which participation is sought. Indeed, so long as the foster parent meets the above criteria, his or her involvement at the final stage is, for obvious reasons, even more invaluable. Nor is there any rational basis for applying a different standard where the foster parent happens to be a blood relative.

Here, there is no question the grandparents had much to offer the court in making its evaluation. By the time of trial they had cared for Sarah and Kristin on a daily basis for almost two years. Moreover, even if they had been precluded from intervening as parties, it is likely their participation as witnesses would have caused appellants the same emotional discomfort of which they complain.

The order and judgment are affirmed.

Crosby, J., and Wallin, J., concurred.