Filed 6/14/13  In re S.R. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re S.R., a Person Coming Under the Juvenile Court Law. | |
| LAKE COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>S.S.,<br><br>        Defendant and Appellant. | A136208<br><br>(Lake County<br> Super. Ct. No. JV-320229-B & C) |

        This is an appeal from the juvenile court's denial of a petition by appellant S.S. (mother) pursuant to Welfare and Institutions Code section 388 to modify a previous court order terminating reunification services and visitation with her minor children, S.R. and V.R. III (collectively, children).  We affirm.

**PROCEDURAL AND FACTUAL BACKGROUND**

        This is the fifth appeal to arise out of these dependency proceedings involving mother and her three children, son V.R. (born July 2000), daughter S.R. (born October 2004), and son V.R. III (born March 2008).[1]  The original petition pursuant to Welfare & Institutions Code section 300 was filed in June 2009 (section 300 petition).  This section 300 petition, which was later amended, was based upon allegations that mother, among

---

[1]        Neither V.R. nor the children's father is a party to this appeal.

1

other things, abused controlled substances including alcohol, marijuana and methamphetamines, and failed to maintain safe and clean living conditions for the children.[2] There was also evidence that V.R. and S.R. had been sexually abused or otherwise physically abused by their father (who also abused mother), and that S.R. and V.R. III had sustained significant physical injuries that were not or could not be adequately explained by mother.[3]

Following contested hearings, the juvenile court sustained the allegations in the section 300 petition, as amended, declared the children dependants, removed them from mother's custody, and ordered reunification services for mother. Eventually, S.R. was placed in a group home and V.R. III in a foster home. The department opined that it was unlikely S.R. would be adopted given her problematic behavior, but likely V.R. III would be adopted.[4]

In the meantime, mother successfully completed six months of reunification services and was permitted six additional months. However, she was thereafter the subject of a section 342 petition filed by respondent Lake County Department of Social Services (department) alleging she sexually abused S.R. during an unsupervised visit by inserting a sharpened pencil into her vagina. After a contested hearing in August 2010, the juvenile court sustained the allegations in the section 342 petition and terminated mother's visitation on the ground that it was detrimental to the children. Then, following

---

[2]   Unless otherwise stated, all statutory citations herein are to the Welfare & Institutions Code.

[3]   More detailed versions of the factual and procedural background of this matter have already been set forth to a large extent in earlier opinions by this court, and thus will not be repeated here. (*In re V.R.*, A129712, Nov. 29, 2011 (2011 Cal.App.Unpub. LEXIS 9177); *In re S.R.*, A131611, Jan. 4, 2012 (2012 Cal.App.Unpub. LEXIS 34); *In re V.R.*, A132565, April 26, 2012 (2012 Cal.App.Unpub. LEXIS 3168); *In re V.R.*, A133847, June 12, 2012 (2012 Cal.App.Unpub. LEXIS 4388).) Instead, we focus on those facts relevant for purposes of deciding the present appeal.

[4]   V.R. III's adoptive placement subsequently fell through. However, the department continued to believe he would eventually be adopted.

another contested hearing in September 2010,[5] the juvenile court terminated services for mother after finding them no longer beneficial and set the matter for a section 366.26 permanency planning hearing. These decisions were affirmed by this court on November 29, 2011. (*In re V.R.*, *supra,* A129712.)

On January 6, 2011, mother filed separate but identical petitions for modification pursuant to section 388 seeking reinstatement of reunification services and/or visitation with all children.[6] Mother's section 388 petition, among other things, advised the juvenile court that, since services and visitation were terminated, she had on her own initiative made substantial efforts in furtherance of reunification. In particular, mother had, among other things, become gainfully employed, enrolled in parenting courses, participated in college-level courses in furtherance of a nursing degree, graduated from a 12-step recovery program, and received counseling services. Additionally, mother claimed the children were bonded to her.

The children's counsel and the department opposed mother's section 388 petition. In doing so, the department incorporated by reference a written psychological evaluation of mother performed by Dr. Jacqueline Singer in April 2010 that, among other things, diagnosed her with depressive disorder, NOS, and alcohol, marijuana and methamphetamine abuse in remission (Axis I of the DSM-IV), and Mixed Personality Disorder, NOS, with Passive, Aggressive and Paranoid features (Axis II of the DSM-IV). In reaching these diagnoses, Dr. Singer identified the following psychological traits in mother. Due at least in part to mother's long term involvement in an abusive relationship, she had poor self-esteem and tended to be hyper-vigilant, socially isolated and passive. At the same time, mother had a tendency to lash out impulsively and sometimes in a hostile manner toward others. Mother had serious cognitive limitations which resulted in difficulties managing her feelings, particularly when highly stimulated

---

[5] This was a joint hearing on the disposition with respect to the section 342 petition and the 12-month status review with respect to the section 300 petition.

[6] For purposes of this appeal, we refer to these petitions collectively as the "section 388 petition."

by her own internal experiences. She often used denial or constriction of experience as a coping mechanism, and her perceptions tended to become distorted by anger or feelings of being overwhelmed, stressed or out of control. Finally, Dr. Singer found, mother was likely to use paranoid-type defenses, projecting her feelings of anger or inadequacy onto others.

On March 7, 2011, the juvenile court summarily denied mother's section 388 petition as to V.R. III and S.R. In doing so, the trial court explained that while "[mother has] addressed some of her issues and was addressing those at the time of the most recent termination [of] services and the setting of the [366].26 . . . she hasn't gone further and addressed the psychological aspects of the problem that – why she would do any of this to her kids."[7]

On March 28, 2011, mother filed a notice of appeal of the juvenile court's summary denial of her section 388 petition. Thereafter, on May 2, 2011, a permanency planning hearing was held in conjunction with the aforementioned hearing on mother's section 388 petition as to V.R. At the conclusion of the hearing, the juvenile court selected adoption as the permanency planning goal for all children, a decision consistent with the department's most recent recommendations. Mother's parental rights to V.R. III were terminated and adoption selected as his permanent plan on November 7, 2011. Long-term foster care, in turn, was selected as S.R.'s permanent plan. Mother filed a timely notice of appeal of these decisions on November 16, 2011.

On January 4, 2012, in one of the aforementioned prior appeals in this matter, we reversed the juvenile court's summary denial of mother's section 388 petition, concluding that mother's evidentiary showing that she had enrolled in a parenting class, found a job, attended college classes, graduated from a substance abuse course, and participated in counseling was "sufficient to warrant a hearing to establish whether the counseling she

---

[7]     The juvenile court ordered a full hearing on mother's section 388 petition as to V.R. after receiving additional information regarding his adoptability, after which the court denied the petition. We affirmed the juvenile court's decision to deny the section 388 petition as to V.R. on May 2, 2011, as well as its selection of adoption as the permanent plan for all children. (*In re V.R., supra,* A132565.)

4

received, in conjunction with her other efforts, amounted to changed circumstances warranting the relief requested (resumption of visitation and a further period of reunification services)." (*In re S.R., supra,* A131611 at p. 7.) As such, we remanded the matter to the juvenile court for a full evidentiary hearing on the section 388 petition.

Before this remand hearing was held, however, on June 12, 2012, we affirmed the juvenile court's termination of mother's parental rights to V.R. III pursuant to section 366.26. (*In re V.R.*, *supra,* A133847 at p. 11.) In doing so, we concluded the record contained substantial evidence supporting the juvenile court's finding by clear and convincing evidence that V.R. III was likely to be adopted within a reasonable time. (*Id.* at pp. 10-11.)

Thereafter, in July 2012, the remand hearing on mother's section 388 petition was held. Mother submitted a supplemental petition indicating she had remained sober, graduated from the Women's Recovery Services program, participated in additional therapy sessions to address anger management and substance abuse issues, and had continued to attend college-level classes. In addition, mother testified at the hearing that she had continued to work on her parenting skills, thereby learning adaptive techniques for dealing with sexually abused children, gaining understanding of her children's struggles and of the need to maintain appropriate boundaries, becoming more open to change and less prone to anger, and improving her listening skills.[8] However, mother continued to deny sexually abusing S.R., despite the fact that the allegations of such abuse in the section 342 petition had been sustained following a full evidentiary hearing. Mother also denied telling a social worker shortly after the incident that she accidentally scraped S.R.'s inner thigh with a sharpened pencil after V.R. III threw the object into the tub while S.R. was bathing, and then later telling the social worker that S.R. scratched herself with a pencil that V.R. III had thrown on the floor. In addition, mother denied

---

[8] Consistent with mother's testimony, social worker Sherri Delatorre testified that, since entering Women's Recovery Services, mother had been nurturing to and appropriate with her children.

telling a police detective that S.R. was injured while squatting naked to try to pick up a pencil on the floor (even though the detective stated otherwise).

Following this hearing, the juvenile court again denied mother's section 388 petition as to V.R. III and S.R, finding "insufficient evidence of changed circumstances regarding her psychiatric issues and anger management, her feelings of depression and anxiety which are in part what led to the current situation." In making this finding, the court referenced a recent July 2012 report from mother's therapist noting that she was still experiencing severe feelings of depression and anxiety, although she hoped to learn certain adaptive parenting skills and personal coping skills. According to the court, this reflected "hope of change" rather than actual change.

Further, with respect to the children's best interests, the juvenile court noted the lack of current evidence of a strong bond between mother and the children and the seriousness of the reasons for their removal. Despite this seriousness, mother continued to be in "complete denial of having done anything," to show no insight or remorse, and to give multiple and inconsistent stories relating to the allegations of abuse. On those grounds, the court denied mother's section 388 petition as to both S.R. and V.R. III.

Mother now seeks review of the order denying her section 388 petition as to both children.

## DISCUSSION

Mother challenges on two grounds the juvenile court's denial of her section 388 petition to modify the order terminating reunification services and visitation with respect to S.R. and V.R. III. First, mother contends the juvenile court's ruling was an abuse of discretion because, as a matter of law, she proved her circumstances had changed such that visitation and further services were in both children's best interests. Second, mother contends the juvenile court's ruling violated the law of the case established by this court in the related appeal of *In re S.R., supra,* A131611, in that the lower court failed to return the matter to the procedural posture existing at the time it erred (as this court held) by summarily denying her section 388 petition. We address each contention in turn.

6

**I.      Was the denial of mother's section 388 petition an abuse of discretion?**

Before and after reunification services are terminated, a parent has a continuing right to petition the court pursuant to section 388 for a modification of any order in the case based on a showing of changed circumstances or new evidence.  (§ 388.)  In bringing the petition, the parent has the burden to prove by a preponderance of the evidence that changed circumstances exist and that the proposed modification would be in the child's best interest.  (*Nahid H*. *v. Superior Court* (1997) 53 Cal.App.4th 1051, 1068; Cal. Rules of Court, rule 5.570(a)(e).)

A juvenile court's decision to grant or deny a section 388 petition will not be disturbed on appeal absent a clear abuse of discretion.  (*In re Stephanie M*. (1994) 7 Cal.4th 295, 318.)  In applying this standard, we keep in mind that "[s]ection 388 plays a critical role in the dependency scheme. Even after family reunification services are terminated and the focus has shifted from returning the child to his parent's custody, section 388 serves as an 'escape mechanism' to ensure that new evidence may be considered before the actual, final termination of parental rights. (Citation.) It 'provides a means for the court to address a legitimate change of circumstances' and affords a parent her final opportunity to reinstate reunification services before the issue of custody is finally resolved. (Citation.)"  (*In re Hunter S*. (2006) 142 Cal.App.4th 1497, 1506; see also *In re Marilyn H*. (1993) 5 Cal.4th 295, 307 [section 388 is one of the "significant safeguards" built into the dependency scheme to ensure parents receive due process].)

As set forth above, mother's petition for modification under section 388 sought further reunification services and/or visitation with S.R. and V.R. III.  The petition, among other things, advised the juvenile court that, since services had terminated, mother had on her own initiative complied with the requirements set forth in the department's case plan by, among other things, finding a job, enrolling in parenting courses, taking college-level courses in furtherance of a nursing degree, graduating from a 12-step recovery program (WSR), and receiving counseling services.  In addition, mother testified at the hearing that she had been learning adaptive techniques for dealing with sexually abused children and other parenting skills, and had gained a greater

7

understanding of her children's struggles and of the need to maintain appropriate boundaries.

In denying mother's section 388 petition, the juvenile court acknowledged this evidence of progress. Nonetheless, the court found mother's circumstances were not sufficiently changed for purposes of section 388, given that she continued to deny having sexually abused S.R. despite the sustained allegations in the section 342 petition, and had not yet successfully acknowledged or treated her mental health issues relating to, among other things, depression, coping with stress and anger management. The juvenile court also noted the lack of evidence in the record of a "strong bond" between mother and the children.

As this record demonstrates, the juvenile court appropriately considered a multitude of relevant factors in denying mother's section 388 petition, including the seriousness of the physical abuse and other problems that led to the children's dependency, the degree to which those problems can or have been ameliorated by mother, and the strength of the children's bond to mother. (*Nahid H*. *v. Superior Court, supra,* 53 Cal.App.4th at p. 1068; Cal. Rules of Court, rule 5.570(a)(e).) And while, as the juvenile court found, the evidence reflected that mother had in the past few months taken steps to address her substance abuse problem, employment status and certain deficiencies in her parenting abilities, it did not prove she had addressed other significant problems relating to her ongoing depression and capacity for abusing her children. While mother continues to insist she did not and would never touch her children in an inappropriate sexual manner, the juvenile court had discretion on this record to find otherwise, particularly in light of the many inconsistencies in her recollection of what happened to S.R. during the instance of abuse alleged in the section 342 petition. We accept the lower court's proper exercise of discretion, as is our duty.

Accordingly, given mother's demonstrated failure to gain insight into or otherwise address these serious problems affecting her ability to parent, the juvenile court had reasonable grounds to find that her evidence of changed circumstances was insufficient and that her children's best interests would not be served by providing additional

8

visitation or reunification services. (See *In re Dakota H.* (2005) 132 Cal.App.4th 212, 229.) Simply put, additional services or visitation would have added to the time during which the children have been deprived of a stable and secure home and, in light of mother's ongoing denial of her significant mental health concerns, would not have made reunification of this family more likely. As such, the juvenile court's decision was appropriate.[9] (*In re Angel B.* (2002) 97 Cal.App.4th 454, 463-464.)

## II. Did the juvenile court violate the law of the case doctrine as to minor V.R. III?

Mother's final contention is that the juvenile court's denial of her section 388 petition must be reversed because it represents a material departure from this court's directions on remand in our earlier decision reversing the summary denial of her petition. Specifically, mother contends: "Because this court found the juvenile court abused its discretion and reversed the lower court's orders related to the denial of Mother's § 388 petition in A131611, all subsequent orders must also be reversed including any order terminating Mother's parental rights [as to V.R. III]. Law of the case mandates that all subsequent orders for [V.R. III] needed to be reversed and [mother's] 388 petition needed to be considered as to [V.R. III]." (Citing *Weisenburg v. Cragholm* (1971) 5 Cal.3d 892, 896; *Gapusan v. Jay* (1998) 66 Cal.App.4th 734, 743.)[10]

_____

[9]    Mother makes much of the fact that this court reversed the juvenile court's summary denial of her section 388 petition, pointing out our conclusion that her petition presented a prima facie showing of changed circumstances. However, mother's argument confuses the appropriate standard. To be entitled to a hearing on a section 388 petition, the parent need only make a prima facie showing of a change of circumstance or new evidence that *might* require a change of order. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 461; see also *In re Marilyn H., supra,* 5 Cal.4th at p. 310 ["parent need only make a prima facie showing to trigger the right to proceed by way of a full hearing [on a section 388 petition]"].) To prevail on such petition, however, the parent must prove by a preponderance of the evidence that changed circumstances actually exist and that the proposed modification would be in the children's best interest. (*Nahid H. v. Superior Court, supra,* 53 Cal.App.4th at p. 1068.) As such, our conclusions in the earlier opinion do not require a different holding here.

[10]    Mother also contends "[i]t was error not to hold the 388-petition hearing as to [V.R. III] based on this court's decision and [her] request to reverse all subsequent orders," claiming without citation to the record that "there was some debate as to whether

9

We agree that, as a general matter, when an appellate court reverses an order of the juvenile court, the case should return to the stage in which it was before the wrongful order was entered. (E.g., *In re A.L.* (2010) 190 Cal.App.4th 75, 77, 80 [when an order denying a section 388 petition was reversed on appeal, it "necessarily vacated the [subsequent] section 366.26 hearing and the orders from the hearing terminating parental rights"]; *In re Alexandria Y.* (1996) 45 Cal.App.4th 1483, 1487, fn. 5. [following appellate court reversal, "[t]he posture of the case was as if none of the subsequent hearings had been held"].) As set forth above, "[e]ven after family reunification services are terminated and the focus has shifted from returning the child to his parent's custody, section 388 serves as an 'escape mechanism' to ensure that new evidence may be considered *before the actual, final termination of parental rights*. (Citation.)" (*In re Hunter S., supra,* 142 Cal.App.4th at p. 1506 (italics added). As such, mother is correct to suggest that "a fair hearing on the section 388 petition [is] a procedural predicate to proceeding to the section 366.26 hearing and disposition." (*In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1416; see also *In re Hashem H.* (1996) 45 Cal.App.4th 1791, 1801 ["The court must first afford appellant a fair hearing on her alleged change of circumstances before proceeding to the section 366.26 hearing and disposition"].)

In this case, as mother points out, the juvenile court terminated her parental rights as to V.R. III on November 7, 2011, *after* the juvenile court's erroneous decision to summarily deny her section 388 petition but *before* the remand hearing on her petition. (See *In re S.R., supra,* A131611.) Adding to the confusion, after our January 4, 2012

on remand, the juvenile court should consider [mother's] petition as to [V.R. III] because [her] parental rights were terminated as to [him] on November 7, 2011." However, the record we have reviewed reflects that, at the start of the July 30, 2012 hearing, mother herself advised the juvenile court she was requesting "[s]ix months of reunification and visitations with my kids," already identified in court as S.R. and V.R. III. Then, at the conclusion of this hearing, the juvenile court specifically found mother failed to show by a preponderance of the evidence that "it's in the best interest of the children to change the Court's previous order" and, thus, that "the 388 petition *as to each of the two minors, [S.R.] and [V.R. III]*, is denied." (Italics added.) Accordingly, we see no support for mother's claim.

reversal of the summary denial of mother's section 388 petition, we *affirmed* the November 7, 2011 order terminating mother's parental rights as to V.R. III. (*In re V.R.*, *supra,* A133847.) A month or so later, on July 30, 2012, the remand hearing on the section 388 petition was held.

As this record reflects, these dependency proceedings have had a long and convoluted history, with numerous continuances and appeals halting its progression. Within this record, mother directs us to no place indicating that she alerted the juvenile court to the need to consider the impact of our January 4, 2012 reversal on the juvenile court's November 11, 2011 order terminating her parental rights as to V.R. III. It is in this context that we must consider mother's new argument that our decision to reverse the summary denial of her section 388 petition and to remand for further proceedings required the juvenile court to vacate all subsequent orders as to V.R. III and S.R., including the order terminating parental rights as to V.R. III that was ultimately affirmed by this court on appeal, thereby becoming final. (See *In re Kristin B.* (1986) 187 Cal.App.3d 596, 603 [termination of parental rights becomes final upon culmination of the appellate process].)

Even accepting for the sake of discussion mother's argument, and disregarding her failure to raise it below, we conclude under these circumstances any possible error by the juvenile court in failing to ensure this matter reverted back to its position at the time of our January 4, 2012 opinion must be deemed harmless.[11] Mother was given, and indeed took advantage of, numerous opportunities to present evidence and argue her case before her section 388 petition was denied and her parental rights to V.R. III terminated. Mother has made no claim that the remand hearing on her section 388 petition or the section 366.26 hearing that resulted in termination of her parental rights as to V.R. III was unfair. Rather, in challenging the order terminating her parental rights as to V.R. III, mother

---

[11]     In its responsive brief, the department wholly failed to address this issue. According to mother, the department thereby conceded the juvenile court's error. However, because we find any error harmless for the reasons stated below, we need not address the consequence of the department's failure.

11

argued only that the evidentiary record could not support a finding that V.R. III was likely to be adopted. (*In re V.R.*, *supra*, A133847, at p. 12.) And, as discussed at length above, in challenging the denial of her section 388 petition, mother now argues the juvenile court's ruling was an abuse of discretion because she proved by a preponderance of the evidence that she had changed her circumstances. (See pp. 5-9 and fn. 9, *ante*.) All the evidence required to consider these claims has been presented to the court. As such, regardless of the timing in which those orders were rendered, mother received all the due process to which she was entitled in seeking to protect her parental rights, and no further purpose would be served by remanding back to the juvenile court for another rehearing. (See *In re Angela C.* (2002) 99 Cal.App.4th 389, 395 [although mother's due process rights were violated by lack of notice of the continued section 366.26 hearing resulting in termination of her parental rights, the error was harmless given that she "had notice of these dependency proceedings from the outset, as well as the opportunity to be heard"]; *In re Nina P.* (1994) 26 Cal.App.4th 615, 622 [although the juvenile court erred in granting a social worker's request to change the permanency plan despite the department's failure to file a section 388 petition, the error was harmless because "[mother's] due process rights were not in any way compromised"], overruled on other grounds in *San Diego County Dept. of Social Services v. Superior Court* (1996) 13 Cal.4th 882.[12]

At the same time, we are quick to note that sending mother's section 388 petition back once again on remand would likely harm the interests of V.R. III, placing him in "legal limbo" and undermining the stability provided by his permanent plan. (E.g., *In re D.R.* (2011) 193 Cal.App.4th 1494, 1513 ["[o]nce a case has advanced to the permanency planning stage, it is important not only to seek an appropriate permanent solution, but also to implement that solution promptly to minimize the time the child is in legal limbo

---

[12] As the court in *Angela C.* explained, "An error in the trial process itself does not require automatic reversal because a court may quantitatively assess such an error in the context of other evidence presented in order to determine whether the error was harmless beyond a reasonable doubt. ([*Arizona v. Fulminante* (1991) 499 U.S. 279,] 307-308.)" (*In re Angela C.*, *supra*, 99 Cal.App.4th at p. 394.)

and to allow the child's caretakers to make a full emotional commitment to the child"]; *In re Jasmon O*. (1994) 8 Cal.4th 398, 420 [while "our statutory scheme expresses a presumption in favor of keeping parents and children together," it "also recognizes the child's interest in a stable, permanent home (§ 366.25, subd. (a)), and has provided that the juvenile court should avoid delay and 'give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements.' (§ 352, subd. (a).)"].) As such, we do not fault the juvenile court for striving to give V.R. III a stable, permanent home as promptly as possible, despite the ongoing litigation at both the trial and appellate levels, particularly where mother has identified no harm suffered due to any failure by the juvenile court to return the case to its previous posture once we reversed the summary denial of her petition. Mother, at all times represented by competent counsel, received full evidentiary hearings before her section 388 petition was denied and her parental rights to V.R. III terminated. And, by now, mother has also received full appellate review of the rulings. It is time to move on.

Accordingly, we conclude mother's challenges to the juvenile court's order denying her section 388 petition as to S.R. and V.R. III must fail.

## DISPOSITION

The juvenile court's order is affirmed.

_____
Jenkins, J.


We concur:


_____
Pollak, Acting P. J.


_____
Siggins, J.

13