Filed 10/22/13 In re L.A. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re L.A. et al., Persons Coming Under the Juvenile Court Law. | B247507 |
| | (Los Angeles County Super. Ct. No. CK94084) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| J.A., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court for the County of Los Angeles. Sherri Sobel, Juvenile Court Referee. Dismissed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

_____

## SUMMARY

J.A., the father in this dependency case, challenges the juvenile court's dispositional orders under Welfare and Institutions Code section 361, subdivision (c),[1] specifically the removal of the children from father's care and a requirement for monitored (rather than unmonitored) visitation. During briefing of father's appeal, the juvenile court removed the restriction on father's visitation and then placed the children in father's home under the supervision of the Los Angeles County Department of Children and Family Services. The department moved to dismiss father's appeal on the ground it is moot. We agree and dismiss the appeal.

## FACTS

Father is a veteran of the Afghanistan war and has two young daughters, L.A. and J.A., born in 2008 and 2009 respectively. Father and mother were separated, but living in the same home with their daughters. On May 1, 2012, father and mother had a violent altercation in the children's presence over a laptop computer. Father "pushed the mother's face to the floor, grabbed the mother's neck, pinned the mother down on the floor by the mother's neck, and choked the mother, causing the mother to have difficulty breathing. The mother scratched the father's hand," and he released her.

The children were crying as they witnessed the domestic violence incident, and L.A. "was very affected and scared" about the incident. Father was arrested but mother did not press charges. Father did not believe he committed domestic violence and said that mother started the incident. The incident was the only domestic violence between the parents of which anyone was aware.

The department's investigation revealed both parents suffered from mental and emotional problems. (The mother's mental health issues are not pertinent to father's appeal.) Father had bouts of depression, and had been in military confinement for eight months after returning from Afghanistan, during an investigation and trial of larceny

---

[1]     All statutory references are to the Welfare and Institutions Code.

charges. While he was confined, a psychiatrist diagnosed father and he was given medication for insomnia and anxiety.

On June 19, 2012, the day after a team decision-making meeting with father, the social worker told father the department would request removal of the children from both parents, and father said, "I gave you consent yesterday to remove from me and I still give consent for the children to be removed from [mother]." The social worker placed the girls at the home of the maternal grandmother. Both parents were told not to visit the children together and that visits would be monitored, and mother and father agreed.

The children were ordered detained with maternal grandmother on June 22, 2012. The contested jurisdictional and dispositional hearing was not completed until January 18, 2013.

In the seven-month interim following detention, father was "cooperative and open to working with [the department]." He talked about his treatment while in military confinement, and "reiterated that he had signs of PTSD [(posttraumatic stress disorder)] and depression," saying "I couldn't sleep and I was always down," and "[i]t was traumatizing being at war . . . ." An assessment report in August 2012 stated father "expressed that he has mental health issues related to having witnessed the death of some of his friends while serving in the military." Since his return to civilian life, father felt "a lot better,' but said, 'I get sad because I don't have my daughters." Father completed parenting classes, enrolled in counseling, and consistently attended his counseling sessions, in which he was "cooperative, open to talking about life issues." The department reported on September 27, 2012, that "there do not appear to be any limiting mental health issues," but father should receive a current mental health assessment "to address his existing diagnosis of depression, [PTSD] and/or anxiety disorder," along with a current medication assessment.

An October 4, 2012 report confirmed father was enrolled in a PTSD clinic, was meeting with a psychiatrist (and would begin taking prescribed medications), and was participating in individual counseling once a week. A November 27, 2012 report

indicated father "expressed a desire for the children to be in his care, but was unable to provide [the social worker] with a viable plan for the children."

At the hearing on January 18, 2013, father requested dismissal of both of the jurisdictional allegations against him, and requested that the girls be placed with him.

The juvenile court sustained the allegations in the petition, including the domestic violence count and the count alleging father "suffers from mental and emotional problems including a diagnosis of [PTSD] and Anxiety Disorder, which renders the father incapable of providing the children with regular care and supervision." The court found by clear and convincing evidence that return of the children would create a substantial risk of danger to their physical or emotional well-being, and removed the children from physical custody of the parents.

Father filed a timely appeal from the court's jurisdictional and dispositional orders.

## DISCUSSION

Father requests reversal of the court's dispositional orders, asserting three errors by the juvenile court: removal of the girls from his care, failure to consider alternatives to removal, and requiring monitored visitation. However, at later hearings in the dependency process, the juvenile court removed the monitoring restriction on father's visitation (April 19, 2013), and then ordered the children placed in father's home under department supervision (July 19, 2013). We granted the department's July 24, 2013 request for judicial notice of these orders.

At the same time, the department moved to dismiss father's appeal on the ground it is moot. We agree the appeal is moot.

"When no effective relief can be granted, an appeal is moot and will be dismissed." (*In re Jessica K.* (2000) 79 Cal.App.4th 1313, 1315 [dismissing as moot the mother's appeal from denial of her section 388 petition, where her parental rights were subsequently terminated and she did not appeal from the termination order].) This is likewise a case where no effective relief can be granted. Any order by this court will

4

have no effect, as father no longer needs the relief he requested: "that the girls [be] placed home of parent father today."

Father contends we should decide his appeal anyway because "[t]he juvenile court's dispositional findings as to Father, if erroneous, could have severe and unfair consequences to Father in future family law or dependency proceedings." But father's concern is entirely speculative. He does not identify any possible consequences, speculative or otherwise, that could conceivably affect him in future proceedings.

Father cites *In re C.C.* (2009) 172 Cal.App.4th 1481, where the mother challenged a visitation order suspending any contact between the mother and her child. By the time the appeal was at issue, the juvenile court had terminated jurisdiction and restored the mother's right to monitored visitation. The mother contended that "the finding of detriment upon which the challenged order denying visitation was based creates the possibility of prejudice in subsequent family law proceedings." (*Id.* at p. 1489.) While the court found this concern "highly speculative," it nonetheless considered the merits of the appeal, "in an abundance of caution and because dismissal of the appeal operates as an affirmance of the underlying judgment or order . . . ." (*Ibid.*) *In re C.C.* relied on cases stating the principle that an issue is not moot " 'if the purported error infects the outcome of subsequent proceedings,' " such as where "the erroneous denial of visitation to an incarcerated parent jeopardized the parent's interests in subsequent proceedings . . . ." (*Id.* at p. 1488, quoting *In re Dylan T.* (1998) 65 Cal.App.4th 765, 769-770 [purported error in denying visitation was not moot; absence of visitation prejudices a parent's interests at a section 366.26 hearing and erodes the parental relationship].)

But this is not a case involving denial of visitation and, as father himself points out, "the question of mootness must be decided on a case-by-case basis." (*In re Kristin B.* (1986) 187 Cal.App.3d 596, 605.) "[W]here a judgment dismissing the dependency action is challenged on appeal the case 'is not moot *if* the purported error is of such magnitude as to infect the outcome of [subsequent proceedings] *or* where the alleged defect undermines the juvenile court's initial jurisdictional finding.' " (*In re*

5

*Joshua C.* (1994) 24 Cal.App.4th 1544, 1547 (*Joshua C.*), quoting *In re Kristin B.,* at p. 605.)

Neither of those two scenarios is applicable here: there is no suggestion how the orders challenged could infect subsequent proceedings, and father has not challenged the jurisdictional findings, nor could he successfully do so. Father says that *Joshua C.* is instructive, but *Joshua C.* does not assist father. There, the father challenged jurisdictional findings that he had sexually abused his daughter and that her sibling was in danger of being sexually abused; the court terminated jurisdiction after awarding sole custody to the mother and restricting the father's visitation. (*Joshua C., supra,* 24 Cal.App.4th at p. 1547.) In *Joshua C.,* the jurisdictional findings were "the basis for the restrictive visitation and custody orders," and so "error in the former undermines the foundation for the latter." (*Id.* at p. 1548.) This is plainly not such a case.

In short, there is simply no identifiable basis for father's claim that the order removing the children "would no doubt prejudice Father" in future proceedings. The children are now in father's custody, and any error in removing the children in the first place cannot "infect the outcome" of future proceedings. Father's appeal of the removal and monitored visitation orders is therefore moot.

### DISPOSITION

The appeal is dismissed as moot.


                                                  GRIMES, J.


We concur:


          BIGELOW, P. J.



          RUBIN, J.


6