Filed 2/5/16  In re P.B. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re P.B., a Person Coming Under the Juvenile Court Law. | |
| HUMBOLDT COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, CHILD WELFARE SERVICES BRANCH,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>    L.N.,<br><br>        Defendant and Appellant. | A145090<br><br>(Humboldt County<br>Super. Ct. No. JV140245) |

        P.B. was removed from his parents' custody when he was two months old after he experienced serious and rapid weight loss.  L.N., P.B.'s mother (Mother), appeals from the jurisdictional and dispositional orders of the juvenile court.  She maintains no substantial evidence supported either the jurisdictional findings regarding failure to protect or the dispositional findings in support of removing P.B. from Mother's care.  We disagree, and affirm.

**BACKGROUND**

        In October 2014, the Humboldt County Department of Health and Human Services, Child Welfare Services Division (Department), received a referral of general neglect regarding P.B. the day after he was born.  P.B. was born with a pneumothorax

1

(collapsed lung), high respiratory rate, and had difficulty maintaining his body temperature. Both parents had developmental disabilities and were clients of the local regional center. Mother had a "mild intellectual disability and a second grade reading level . . . is easily overwhelmed and has seizure like symptoms when she gets anxious or overwhelmed." The Department received the referral based on the parents' difficulty meeting P.B.'s basic needs and maintaining their own personal hygiene and living environment, and initiated a "non-court family maintenance case" to support the parents in caring for P.B. at home and "assist the parents in feeding the infant."

About a month later, the Department received another referral of general neglect based on P.B. losing weight and his father (Father) yelling at him "almost daily."

In December 2014, the Department received a third referral of general neglect based on P.B. being "dressed only in a diaper and . . . chilly." P.B. had gained only one and a half pounds in two months. Father treated P.B. roughly and yelled at him to "shut up" when he cried.

Two weeks later, the Department received yet another referral of general neglect as to Mother and severe neglect as to Father. Father exhibited inappropriate behaviors with P.B., such as blowing in his face, yelling and stating " 'you are allowed to hit your baby as long as you do not leave welts or marks.' "

Social workers visited the home, and found open medication bottles, trash, dirty diapers and items that were choking hazards strewn about the home. Father reported P.B. had been vomiting all day. He claimed a parent educator told him blowing in the baby's face was a good way to comfort him and get him to stop crying. Both parents indicated P.B. used "sign language" to indicate he was hungry, which they explained meant P.B. indicating his hunger by putting his hands in his mouth. The parents used "an alarm system to remind them of feedings." P.B., who had trouble regulating his body temperature at birth, had cold feet. Mother told the social worker it was not necessary for him to wear socks or a hat indoors because it was warm.

The Department obtained a warrant to remove P.B. from his parents after a public health nurse reported P.B. was continuing to lose weight. P.B.'s weight when he was

born was in the 68th percentile, and had gone down to the 9th percentile. When social workers arrived at the home on December 23, P.B. was wearing only a urine-soaked, toddler-sized "pull-up." He was cold to the touch, was dirty and had "a foul smell." A public health nurse examined P.B. and noted he appeared to be dehydrated. The court ordered him detained.

At the contested jurisdictional hearing, Mother sought dismissal of the petition as to her, claiming there was no substantial risk of future harm to P.B. The court sustained the petition and found by clear and convincing evidence P.B. was a child described by Welfare and Institutions Code section 300, subdivision (b).

The Department submitted a report for the March 2015 dispositional hearing. P.B. had been placed in a licensed foster home, where he immediately began to gain weight. Mother had twice-weekly supervised visitation with P.B., and was "improv[ing] in her ability to take direction and advice from . . . staff and the maternal grandmother regarding caring for [P.B.]" Mother had separated from Father and was living at the maternal grandmother's home. The maternal grandparents stated it was stressful having her live with them, and they wanted Mother to live on her own.

The Department recommended further reunification services for Mother, including counseling, a psychological assessment, parenting education, and visitation. In addition, in order to be reunified with P.B., Mother needed to obtain and maintain safe and appropriate housing.

The juvenile court found there was a substantial danger to the physical health, safety, protection or physical and emotional well-being of P.B. if he were returned to his parents' custody. The court adopted the suggestion of P.B.'s counsel that a review hearing be set in 60 days to determine whether P.B. could return to Mother's care by that time. The court set the 60-day hearing for June 2, 2015, and the six-month review hearing for October 1, 2015.[1]

---

[1] We grant the Department's request for judicial notice of the findings and orders issued at the June 2, 2015 hearing.

Following the continued 60-day hearing in August 2015, the court ordered P.B. placed with Mother, and that the Department provide family maintenance services.

## DISCUSSION

Mother maintains no substantial evidence supports the jurisdictional or initial dispositional orders. The Department asserts that, because P.B. was subsequently ordered placed with Mother in August 2015, Mother's appeal is moot.

### *Mootness*

An appellate court's jurisdiction extends only to actual controversies for which the court can grant effective relief. (*In re Christina A*. (2001) 91 Cal.App.4th 1153, 1158.) "In juvenile cases, when an issue raised in a timely notice of appeal continues to affect the rights of the child or the parents, the appeal is not necessarily rendered moot by the dismissal of the underlying dependency proceedings. [Citation.] Rather, the question of mootness must be decided on a case-by-case basis." (*In re Hirenia C.* (1993) 18 Cal.App.4th 504, 518–519.) An appeal in a dependency proceeding "is not moot if the purported error is of such magnitude as to infect the outcome of [subsequent proceedings] or where the alleged defect undermines the juvenile court's initial jurisdictional finding." (*In re Kristin B*. (1986) 187 Cal.App.3d 596, 605, italics omitted.) We decide on a case-by-case basis whether subsequent events in a juvenile dependency proceeding make a case moot and whether our decision would affect the outcome in a subsequent proceeding. (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1404.)

In *In re J.K*. (2009) 174 Cal.App.4th 1426, the juvenile court sustained the jurisdictional allegations, awarded the mother full legal and physical custody with monitored visits for the father with the minor's consent, and then terminated dependency jurisdiction. (*Id*. at p. 1431.) On appeal, the court agreed the appeal was not moot because "the jurisdictional findings could affect Father in the future, if dependency proceedings were ever initiated, or even contemplated, with regard to the Minor or Father's other children, if any." (*Id*. at p. 1432.) Similarly here, the findings could potentially affect Mother in the future. In an "abundance of caution," we address her

4

claim that no substantial evidence supports the court's orders. (See *In re C.C.* (2009) 172 Cal.App.4th 1481, 1488–1489.)

***Substantial Evidence Supports the Jurisdictional and Dispositional Findings***

"In a challenge to the sufficiency of the evidence to support a jurisdictional finding, the issue is whether there is evidence, contradicted or uncontradicted, to support the finding. In making that determination, the reviewing court reviews the record in the light most favorable to the challenged order, resolving conflicts in the evidence in favor of that order, and giving the evidence reasonable inferences. Weighing evidence, assessing credibility, and resolving conflicts in evidence and in the inferences to be drawn from evidence are the domain of the trial court, not the reviewing court. Evidence from a single witness, even a party, can be sufficient to support the trial court's findings. [Citations.]" (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 450–451 (*Alexis E.*).) The same standard of review applies to dispositional orders.

Mother asserts no substantial evidence supported the jurisdictional allegations, including that she could not feed P.B. every two hours, that P.B. was at risk of another collapsed lung, that P.B. was at risk due to "clutter" in the home, or that Mother's actions or inactions led to P.B.'s significant weight loss. "When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if *any one* of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence. [Citations.]" (*Alexis E.*, *supra*, 171 Cal.App.4th at p. 451, italics added.)

The evidence established Mother had difficulty feeding and caring for P.B. due to her developmental disability. Most significantly, she either did not fully understand the necessity of feeding a newborn frequently, or was not able to do so. P.B., already fragile due to his collapsed lung at birth, went from the 68th percentile in weight to the 9th percentile in Mother's care, despite the Department's provision of "non-court family

maintenance" to support the parents in caring for P.B. at home and "assist the parents in feeding the infant." Substantial evidence supported the juvenile court's jurisdictional findings as to Mother.

Mother similar maintains no substantial evidence supported the initial dispositional order placing P.B.in foster care. However, the evidence established that even with significant assistance provided to Mother to care for P.B. at home, he still failed to gain adequate weight. As soon as P.B. was placed with a foster parent, he began gaining weight. Mother then moved in with the maternal grandmother, who had taken time off work until June 2015 in order to assist Mother in caring for P.B. Mother did not have her own housing, and the maternal grandmother did not want her to continue living in her home. Although Mother had made adequate progress with her case plan, the social worker believed she was still not in a position to care for P.B. on her own without counseling, further parent education, and safe and appropriate housing. Again, substantial evidence supported the juvenile court's order finding there would be a substantial danger to P.B.'s physical health, safety, protection and well-being if he were returned home at that time.

**DISPOSITION**

The orders from which Mother appeals are affirmed.

6

_____
Banke, J.

We concur:


_____
Humes, P. J.


_____
Dondero, J.

7